**SAN JUAN RACING ASSOCIATION, INC., d/b/a El Nuevo Comandante, Plaintiff,**

v.

**LABOR RELATIONS BOARD OF PUERTO RICO in representation of Union De Empleados Del Hipodromo El Comandante, Defendant.**

Civ. No. 81–1097(PG).

United States District Court, D. Puerto Rico.

Jan. 27, 1982.

52

Luis F. Antonetti, Goldman, Antonetti & Davila, San Juan, P. R., for plaintiff.

Juan Antonio Navarro, San Juan, P. R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

The San Juan Racing Association, Inc., doing business as El Nuevo Comandante, filed on June 16, 1981, a Petition for Removal in this case, pursuant to Section 301 of the National Labor Relations Act (29 U.S.C. § 185) in a suit for alleged violations of a collective bargaining contract between plaintiff and plaintiff's employees, Unión de Empleados del Hipódromo El Comandante. On June 25, 1981, the Puerto Rico Labor Relations Board filed a Motion to Remand alleging that this case is not removable to this Court in view of the fact that the National Labor Relations Board (hereinafter "the Board"), through its Rules and Regulations, Section 103.3, 29 C.F.R. 103.3, has especifically declined not to assert its jurisdiction in any proceeding under Sections 8, 9 and 10 of the National Relations Board Act (hereinafter "the Act") concerning the horseracing and the dogracing industries.[1]

1. The National Labor Relations Board's Rules and Regulations, Section 103.3 (29 C.F.R. 103.-3) provides that "The Board will not assert its jurisdiction in any proceedings under sections 8, 9 and 10 of the Act involving the horseracing and dogracing industries.".

Petitioner, on the other hand, contends that the fact that the Board has not deemed it appropriate to assert its jurisdiction over the horseracing industry under Sections 8, 9 and 10 of the Act, does not preclude or prevent the Court from asserting its jurisdiction in suits for violations of contracts between petitioner and the Union. According to petitioner, the Court has an independent and exclusive jurisdiction under 29 U.S.C. § 185(a) to entertain this suit "for alleged violations of contracts between an employer and a labor organization in an industry affecting commerce.".[2]

Thus, the issue in this case is whether or not this Court has jurisdiction to entertain the present action under the provisions of Section 301 of the Act (28 U.S.C. § 185) in an industry where the National Relations Board has not asserted its jurisdiction in proceeding under Sections 8, 9 and 10 of the Act.

It is well established that Congress, in passing the National Labor Relations Act, intended to give the Board the fullest permissible jurisdiction under the Commerce Clause of the Constitution. *N.L.R.B. v. Reliance Fuel Corp.*, 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963); *Polish National Alliance v. N.L.R.B.*, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944); *N.L.R.B. v. Wentworth Institute*, 515 F.2d 550 (1 Cir. 1975). This statutory jurisdiction of the Board extends to all representation questions and unfair labor practices "affecting commerce". 29 U.S.C. §§ 159(c)(1), 160(a).

Because of several factors, including limited resources and manpower, the Board, for the first fifteen years of its existence, has determined on a case by case method whether or not to assume jurisdiction in a particular case. This practice was replaced in 1950 with a series of standards to determine whether the Board would assume jurisdiction in a specific type of industry. These standards, determined by the Board in a series of 1950 decisions were essentially dollar volume standards. In 1959, Congress recognized the Board's practice of limiting its caseloads by not asserting its jurisdictional authority to its limit in certain cases by the enactment of Section 14(c)(1) of the Act. 29 U.S.C. § 164(c)(1). Said statute provides that the Board, in its discretion, may, by rule of decision or by published rules, decline to assert jurisdiction over any labor dispute, where in the opinion of the Board, the effect of such labor dispute on interstate commerce is not sufficiently substantial to warrant the exercise of its jurisdiction. Furthermore, the Act also provides in Section 164(c)(2) that in the event that the Board declines jurisdiction, said statute authorizes states and territories to assert jurisdiction in those cases. *Glen Manor Home for Jewish Aged v. N.L.R.B.*, 474 F.2d 1145 (6 Cir., 1973); *N.L.R.B. v. National Survey Service, Inc.*, 361 F.2d 199 (7 Cir., 1966).

 Therefore, it is clear that the Board has the broadest jurisdictional authority possible under the Constitution, and that it may, but need not, decline jurisdiction in certain cases in exercise of its discretion. Thus, the extent to which the Board chooses to exercise its statutory jurisdiction is a matter of administrative policy within the Board's sound discretion. In the absence of extraordinary circumstances, or abuses of that discretion, such a discriminatory exercise of jurisdictional discretion by the Board is not subject to review by the Federal courts. *N.L.R.B. v. Carroll-Naslund Disposal, Inc.*, 359 F.2d 779, 780 (9 Cir., 1966); *N.L.R.B. v. Welcome-American Fertilizer Co.*, 443 F.2d 19 (9 Cir., 1971); *Glen Manor Home for Jewish Aged v. N.L.R.B.*,

---

**2.** Petitioner based this contention in that the San Juan Racing Association, Inc., d/b/a El Nuevo Comandante, is an employer in industry affecting interstate commerce in that the shares of the corporate stock of petitioner are registered, listed and traded in the New York Stock Exchange, and all transactions involving those shares must be carried out and recorded also by the New York Stock Exchange. Furthermore, all material used in its betting system is bought directly by petitioner and shipped to Puerto Rico from Mainland United States of America. The average yearly cost of this betting material and also the office material purchased by and used in the betting system is in excess of $690,000.00. The purchase of equipment directly from Continental United States is in excess of $790,000.00.

*supra; N.L.R.B. v. Harrah's Club*, 362 F.2d 425 (9 Cir., 1966).

■ In cases involving the horseracing industry the Board has consistently declined to exercise jurisdiction under Sections 8, 9 and 10 of the Act over the racetracks industry, as well as over labor disputes involving employers whose operations are an integral part of the said industry. *American Totalisator Co.*, 101 L.R.R.M. 1403 (1979); *Los Angeles Turf Club, Inc.*, 26 L.R.R.M. 1154 (1950); *Jefferson Downs, Inc.*, 45 L.R.R.M. 1108 (1959); *Meadow Stub, Inc.*, 47 N.L.R.B. 1202 (1961); *Hialeah Race Course, Inc.*, 45 L.R.R.M. 1106 (1959); *Walter A. Kelley*, 51 L.R.R.M. 1375 (1962); *Centennial Turf Club, Inc.*, 77 L.R.R.M. 1894 (1971); *Yonkers Raceway, Inc.*, 79 L.R.R.M. 1697 (1972), and others.

Furthermore, the Board has recently reiterated its position in a formal ruling, Jurisdictional Standards, 28 C.F.R. 1, Part 103, Subpart A, 82 L.R.R.M. 1737 (1973). It has done so pursuant to the authority vested in the Board under the previously mentioned Section 14(c)(1). The Board's rationale in exempting racetracks from the Board's regulation has been that:

> "It appears that State law sets racing dates of the tracks; State law determines the percentage share of gross wages to be retained by the track. In addition, the State licenses employees, exercises close supervision over the industries through State racing commissions, and in many States retains the right to effect the discharge of employees whose conduct jeopardizes the 'integrity' of the industry.[3] As the industries constitute a substantial source of revenue of the States, a unique and special relationship has developed between the States and these industries which is reflected by the States continuing interest in and supervision over the industries." N.L.R.B. Jurisdictional Standard, *supra*, at 1737.

The Board has not asserted jurisdiction over the horse-racing industry considering that said industry constitutes an important source of revenue for the States, thus resulting in detailed state regulations over the industry. N.L.R.B.—Jurisdictional Standards, 28 C.F.R. 1, Part 103, Subpart A, *supra*. Therefore, it is the Board's opinion that a unique and close relationship has developed between the states and this industry so that the operation of horseracing is essentially local in character and that a labor dispute there is not likely to disrupt interstate commerce. As stated by the Board in *Walter A. Kelley, supra*, at 1377: "Unless the hands of State authorities are tied, no labor dispute in this industry is likely to be permitted to last sufficiently long to interfere seriously with interstate commerce.". In view of the above, it is the Board's view that the regulations of labor matters governing the racing industry should be left to the State since the employees involved are already subject to detailed State regulations, and also, considering that Congress has provided under Section 14(c)(2) of the Act that the States could assume jurisdiction if the Board declines to do so over the horseracing industry.[4]

In all these factors, the Board has recognized that the operations of the racing industry are likely to exercise some impact upon interstate commerce, but still, the Board's opinion is that the impact is not so substantial so as to warrant the assertion of jurisdiction over the horseracing industry. Moreover, it is the Board's conception, in view of the oppressive caseload of the N.L.R.B. that the Board's limited resources can be better devoted to industries and operations where labor disputes are likely to have a more substantial impact over interstate commerce than labor disputes in the racing industry. *Walter A. Kelley, supra; Inde-*

---

**3.** In the Commonwealth of Puerto Rico, the Puerto Racing Act, 15 L.P.R.A. § 181, et seq., provides for an extensive regulation of all matters concerning the racing sport that includes all the factors considered by the N.L.R.B. in declining to assert jurisdiction over the racing industry.

**4.** Pursuant to the abovementioned provision, all labor disputes in the horseracing industry in Puerto Rico have been handled and resolved by the Puerto Rico Labor Relations Board.

pendent *Assoc. of Pari-Mutual Employees of the State of Florida v. Gulf Stream Park Racing Assoc., Inc.*, 407 F.Supp. 855 (S.D. Fla., 1976). Therefore, the Board found that it would not effectively effectuate the provisions of the Act to assert jurisdiction over the horseracing industry.

This Court concludes that Congress primarily committed to the N.L.R.B. the delicate and difficult responsibility to effectuate N.L.R.B. policies subject to limited judicial review. *N. L. R. B. v. Truck Drivers*, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676 (1951); *Beth Israel Hospital v. N. L. R. B.*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978); *N. L. R. B. v. Resistor Corp.*, 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). The Board, through its cumulative experience in dealing with labor management relations in a variety of industrial and non-industrial backgrounds, has developed the expertise to determine whether the asserting of jurisdiction over the racing industry would further the objectives of the Act. Thus, we are obliged to consider those same factors which led to the Board's conclusion that the racing industry does not have such a substantial effect on interstate commerce so as to warrant the exercise of its jurisdiction over it. The Court finds it best to defer to the expertise of the Board when it concluded that horseracing is an industry essentially of local concern, that the industry is subject to extensive State regulations, and furthermore, that State courts are empowered with jurisdiction over labor disputes arising within it. 29 U.S.C. § 164(c)(2); *Ind. Ass'n. of Pari-Mut. Emp. v. Gulfstream Park Racing Assoc., Inc., supra.*

Finally, it may be added that the Board's decision not to assert its jurisdiction over the horseracing industry is not irrevocable. The limitations on the exercise of jurisdiction of the Board is self-imposed and it can exercise jurisdiction pursuant to the statute under any reasonable set of circumstances it deems appropriate. *International Union Progressive Mine Workers v. N. L. R. B.*, 319 F.2d 428, 435 (7 Cir., 1963); *N. L. R. B. v. Okla-Inn*, 488 F.2d 498 (10 Cir., 1973).

Thus, if the Board's expectations are not realized, the Board can reappraise its policy in this area taking into consideration the new developments in society and assert jurisdiction over the horseracing industry as long as its new construction is consistent with the Act. *N. L. R. B. v. Harrah's Club, supra; Walter A. Kelley, supra; N. L. R. B. v. Wentworth Institute, supra.*

WHEREFORE, in view of the foregoing, plaintiff's Petition for Removal is hereby DENIED, and the case is hereby REMANDED to the Puerto Rico Labor Relations Board.

IT IS SO ORDERED.