**RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL–CIO, LOCAL 310, Plaintiff-Appellant,**

v.

**NATIONAL LABOR RELATIONS BOARD and Scioto Downs, Inc., Defendants-Appellees.**

No. 83–3622.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 29, 1984.

Decided Oct. 3, 1984.

Gordon G. Hobson (argued), Columbus, Ohio, for plaintiff-appellant.

Aileen A. Armstrong, Corinna Metcalf, Washington, D.C. (argued), for N.L.R.B.

John Chester, Rodrick H. Willcox (argued), Chester, Saxbe, Hoffman & Willcox, Jonathan M. Norman, Columbus, Ohio, for Scioto Downs.

\* Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

Before KENNEDY, Circuit Judge; PHILLIPS, Senior Circuit Judge; and WOODS, District Judge.\*

PHILLIPS, Senior Circuit Judge.

This appeal arises out of the long-standing decision of the National Labor Relations Board not to assert jurisdiction over the horse and dog racing industries. This has been the policy of the Board since its creation. *New York Racing Association, Inc. v. NLRB*, 708 F.2d 46, 48 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983).

## I

Plaintiff, a Union representing approximately 200 employees of Scioto Downs Corporation, operator of a harness horse racing track in Columbus, Ohio, filed an unfair labor practice charge with the Board, complaining that Scioto had failed to bargain in good faith during negotiations for renewal of a collective bargaining agreement with employees in its parimutuel and parking lot departments. In conformity with the Board's rule not to take jurisdiction in horse racing cases, the Regional Director refused to issue a complaint and the General Counsel denied an appeal.

The Union then initiated this action in the District Court for declaratory and injunctive relief, seeking a decision that the Board's continued adherence to its rule against asserting jurisdiction over the horse racing industry is arbitrary, unreasonable and an abuse of discretion. The Union also asserted that the Board's refusal to take jurisdiction of the Union's unfair labor practice charge violates due process. In a separate action the Union named Scioto as a defendant and sought to have the District Court take jurisdiction of the unfair labor practice claim.

District Judge Robert M. Duncan dismissed the action for lack of subject matter jurisdiction. We affirm.

## II

The Board's Rule 103.3 provides: "The Board will not assert its jurisdiction in any proceeding under sections 8, 9 and 10 of the Act involving the horse racing and dog racing industries." 38 Fed.Reg. 9507 (1973), codified at 29 C.F.R. § 103.3 (1982). This rule was promulgated under rule making authority granted by Congress in 29 U.S.C. § 164(c)(1), which provides:

**Power of Board to decline jurisdiction of labor disputes; assertion of jurisdiction by State and Territorial courts**

(c)(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to subchapter II of chapter 5 of Title 5, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

The background of the Board's decision with respect to the horse racing and dog racing industries was summarized in *New York Racing Association, Inc. v. NLRB, supra,* as follows:

The relations between the Racing Association and its some 1,700 employees are nevertheless regulated by defendant-appellant New York State Labor Relations Board (the State Board) rather than by the NLRB. This is because the NLRB has always declined to take jurisdiction over labor relations in the horse racing and dog racing industries. Indeed, since its creation the NLRB has never exercised all of its broad statutory jurisdiction, which extends to the limits of the commerce clause. See *NLRB v. Children's Baptist Home,* 576 F.2d 256, 258 n. 1 (9th Cir.1978); *NLRB v. Marinor Inns, Inc.,* 445 F.2d 538, 541 (5th Cir.1971). Over the years, however, the NLRB has from time to time reconsid-

ered its policy of not regulating a particular industry, and in some instances, it has reversed its position and exercised jurisdiction. E.g., Cornell University, 183 NLRB 329 (1970) (non-profit education). Cf. Volusia Jai Alai, Inc., 221 NLRB 1280 (1975) (jai alai); El Dorado Inc., 151 NLRB 579 (1965) (casino gambling).

In 1975, the NLRB considered such a reversal of its position regarding the horse racing and dog racing industries. Following the informal rule-making procedures of the Administrative Procedure Act, 5 U.S.C. § 553, it announced in the Federal Register its intention to consider promulgating a rule asserting jurisdiction over these industries and inviting comment by interested parties. The NLRB received approximately 90 responses to this notice, the vast majority of which opposed the assertion of jurisdiction by the NLRB. After considering this record, the Board decided to continue to decline jurisdiction, and in April 1973, promulgated Rule 103.3... The Board noted in an accompanying explanatory statement that the states exercised extensive control over the horse racing and dog racing industries, including some aspects of labor relations. It also found that employment in these industries was generally part-time, short-term, and sporadic, suggesting that the impact on commerce was minimal and that national regulation would be difficult and ineffective. Finally, the NLRB mentioned that few labor disputes had occurred in these industries in recent years. Its conclusion was that "the impact of labor disputes in these industries is insubstantial and does not warrant the Board's exercise of jurisdiction." 38 Fed.Reg. 9537 (1973).

In 1979, the Racing Association and the American Totalisator Company, Inc., filed petitions with the NLRB requesting the Board to repeal or amend Rule 103.3 and to assert jurisdiction over the horse racing and dog racing industries. The NLRB denied these petitions and announced its intention to "continue to de-

cline to assert jurisdiction over labor disputes in these industries." 243 NLRB 314, 315 (1979). The NLRB acknowledged that "the operations of the Petitioners herein as a part of the horseracing industry are related to interstate commerce," id., but justified its decision to continue its long-standing policy by Congress' failure to overrule it in the Interstate Horseracing Act of 1978, and by the NLRB's inability to extend its jurisdiction without aggravating its already critical backlog of work. Chairman John H. Fanning and Member John C. Truesdale dissented, stating that the industries' substantial impact on commerce, recognized by Congress in the 1978 Act, as well as predictions in the press of unrest in the industries, warranted the exercise of jurisdiction.

In 1980, the Racing Association again asked the NLRB to take jurisdiction over it, this time by filing a petition under the National Labor Relations Act (the Act), 29 U.S.C. § 159(c)(1)(B), for an investigation and certification of bargaining representatives. Board Case No. 29–RM–635 (1980). In September 1980, the Regional Director denied the request on the grounds that "it would not effectuate the purposes of the Act to assert jurisdiction herein," relying on the Board's consistent policy on the horse racing industry, embodied in Rule 103.3. 708 F.2d at 48.

The opinion of the Second Circuit continued:

Congress considered continuing and extending this approach to the problem by requiring the Board to assert jurisdiction over all labor disputes within its statutory jurisdiction, that is, over all labor disputes affecting interstate commerce. H.R. 8342, 86th Cong., 1st Sess. (1959), U.S.Code Cong. & Admin.News 1959, p. 2318, *reprinted in* 1 NLRB Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 687 (1959) [hereinafter cited as *Leg.Hist.*]. This approach was ultimately rejected because it was recognized that the Board could not cope with the volume of cases that would be thrust

upon it. See, e.g., 105 Cong.Rec. 6537–38 (1959) (remarks of Sen. Goldwater), *reprinted in* 2 *Leg.Hist.* at 1143; 105 Cong.Rec. 14,346–47 (1959), (analysis introduced by Rep. Griffin), *reprinted in* 2 *Leg.Hist.* at 1522; 105 Cong.Rec. 15,546 (1959) (remarks of Rep. Dixon), *reprinted in* 2 *Leg.Hist.* at 1582. Congress also considered and rejected a version of the statute that would have required the Board to issue written standards for when it would take jurisdiction, S. 1386, 86th Cong., 1st Sess. (1959), *reprinted in* 1 *Leg.Hist.* at 332, and a version requiring the states to apply federal law in cases over which the Board could have asserted jurisdiction but chose not to. S. 1555, 86th Cong., 1st Sess. (1959), *reprinted in* 1 *Leg.Hist.* at 338. Instead, Congress passed a statute, which became § 14(c), that was criticized by its opponents as placing "no limitation whatsoever upon the Board's power to deny employees and employers the protection of the National Labor Relations Act." 105 Cong.Rec. 15,537, 15,542 (address of Sen. Rayburn, read into record by Rep. Thompson), *reprinted in* 2 *Leg.Hist.* at 1574, 1578. See also 105 Cong.Rec. 15,-550–51 (1959) (analysis of Rep. Eliot, read into record by Rep. Bolling), *reprinted in* 2 *Leg.Hist.* at 1587; 105 Cong.Rec. 17,877 (1959) (remarks of Sen. Morse), *reprinted in* 2 *Leg.Hist.* at 1421.

In sum, the legislative history shows that in enacting section 14(c), Congress ... permitted the states to regulate labor relations when the NLRB had jurisdiction but declined to assert it, and preserved the Board's discretion to so decline. The language Congress used to describe that discretion, together with the comments of legislators who opposed this approach, strongly suggest that Congress intended also that the Board's exercise of its discretion would ordinarily be unreviewable.

708 F.2d at 53 (footnote omitted).

In *Pari Mutuel Clerks Union of Louisiana v. Fair Grounds Corp.*, 703 F.2d 913,

917 n. 2 (1983), the Fifth Circuit commented:

2. The NLRB's rationale for declining to assert jurisdiction over the racing industry is that racing operations are so essentially local in character that a labor dispute therein would be unlikely to disrupt interstate commerce. The NLRB views regulation of racing industry labor matters as an area best left to the states, because race tracks are subject to detailed state regulation that could be extended to include labor relations. *See San Juan Racing Ass'n, v. Labor Relations Board of Puerto Rico*, 532 F.Supp. 51, at 54; *Independent Ass'n of Pari-Mutuel Employees v. Gulfstream Park Racing Ass'n*, 407 F.Supp. 855, 856 (S.D. Fla.1976).[1]

### III.

■ The Union argues that when the Board declines to assert jurisdiction over an industry, the District Court has jurisdiction to determine independently "whether unfair labor practices have been committed and if so to remedy the unfair labor practice." We agree with the District Judge that this contention is without merit. It is true that 29 U.S.C. § 185 vests district courts with jurisdiction in contract disputes between unions and employers or between labor organizations, but this statute has no application to unfair labor practices. It is well established that the Board is the exclusive public agency chosen by Congress to enforce the Labor Act, subject only to review by the Courts of Appeals. 29 U.S.C. § 160; *San Diego Unions v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); *Nathanson v. NLRB*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952); *Amalgamated Utility Workers (C.I.O.) v. Consolidated Edison Co. of New York*, 309 U.S. 261, 269, 60 S.Ct. 561, 565, 84 L.Ed. 738 (1940); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48, 58 S.Ct. 459, 462, 82 L.Ed. 638 (1938).

In *Dunn v. Retail Clerks International Association, AFL–CIO*, 307 F.2d 285, 288 (6th Cir.1962), this Court held that jurisdiction to review final orders of the Labor Board properly lies only in the Courts of Appeals:

The National Labor Relations Act provides that the General Counsel of the Board shall exercise general supervision over the officers and employees in the regional offices and "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, * * *." (Section 153(d), Title 29 U.S.C.A.) By regulation, the General Counsel has delegated authority to Regional Directors to issue such complaints. (Regulations 29 C.F.R., Section 102.15.) A refusal of the Regional Director to issue a complaint may be appealed to the General Counsel. (Regulations 29 C.F.R., Section 102.19.) The General Counsel has a wide discretion in determining whether a complaint should issue and the Act provides no appeal from his decision. (Section 153(d), Title 29 U.S.C.A.) *National Labor Relations Board v. Indiana & Michigan Electric Co.*, 318 U.S. 9, 18, 19, 63 S.Ct. 394 [400], 87 L.Ed. 579; *Retail Store Employees Union Local 954, etc. v. Rothman*, 298 F.2d 330, 332, C.A.D.C.; *Hourihan v. National Labor Relations Board*, 91 U.S.App.D.C., 316, 201 F.2d 187, 188, cert. denied, 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359; *Lincourt v. National Labor Relations Board*, 170 F.2d 306, 307, C.A.1. His position is much the same as that of a United States Attorney in determining whether a criminal charge should be issued. There is no allegation in the complaint that an appeal was made to the General Counsel.

Congress has provided an administrative tribunal, the National Labor Relations Board, to administer the Labor Acts and

---

**1.** It was stated in oral argument in the present case that Scioto Downs is regulated by the State of Ohio Racing Commission; that the State Racing Commission refused to accept jurisdiction of the instant labor dispute; and that appellant did not appeal to the Ohio State Courts.

final orders from it may be reviewed by the United States Courts of Appeal. (Section 160(e), (f), Title 29 U.S.C.A.) Otherwise the power of the Board in disputes between labor and management over alleged unfair labor practices is exclusive. (Section 160(a), Title 29 U.S. C.A.) *Myers v. Bethlehem Corp.*, 303 U.S. 41, 48, 58 S.Ct. 459 [462], 82 L.Ed. 638; *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738; *Thompson Products v. National Labor Relations Board*, 133 F.2d 637, 640, C.A.6. See also: *San Diego Building Trades Council etc. v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773 [779], 3 L.Ed.2d 775. No other jurisdiction is granted by the Labor Acts for an employer to petition for relief in the District Courts.

Accordingly, the district judge in the present case was correct in holding that the complaint states no cause of action within the jurisdiction of the District Court.

## IV.

 Equally without merit is the contention of appellant that the Administrative Procedure Act confers jurisdiction on the District Court to review the Board's refusal to assert jurisdiction over employers in the horse racing business. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). *See also New York Racing Association, Inc. v. NLRB, supra*, 708 F.2d 46, 50.

The question of whether the Union might have a remedy under 5 U.S.C. § 553 is not presented in the present case, since the Union did not utilize the procedure prescribed by that statute. In any event, the District Court would have no jurisdiction to review the Board's decision. We do not reach the question of whether review would be available in a Court of Appeals on the record of the Board's rulemaking proceedings. *Compare Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654 (D.C. Cir.1975).

The judgment of the District Court is affirmed. No costs are taxed. The parties will bear their own costs on this appeal.