Nicholas C. RICHARDS,
Plaintiff-Appellant,

v.

LOCAL 134, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and Arlington Park Race Track Corporation, Defendants-Appellees.

No. 85–2916.

United States Court of Appeals,
Seventh Circuit.

Submitted April 30, 1986.*

Decided May 13, 1986.

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Robert P. Nolan, Glen Ellyn, Ill., for plaintiff-appellant.

Francis M. Pawlak, Burke, Griffin, Chomica & Wienke, P.C., Chicago, Ill., Robert E. Ritzgerald, Jr., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and BAUER, and FLAUM, Circuit Judges.

PER CURIAM.

Plaintiff-appellant, Nicholas Richards, a member of Local Union 134 of the International Brotherhood of Electrical Workers, was employed by Arlington Park Race Track from 1979 until July 27, 1984, as a parimutuel clerk. On August 5, 1984, Wayne Hoffman, the Mutuel Manager at Arlington, issued a letter to Tim Breshnahan of Local 134 notifying the Local that Richards had been terminated on July 27, 1984, for insubordination. Richards filed a grievance on August 5, 1984, alleging that he had been improperly discharged. He contends in his complaint that no settlement was reached and that Local 134 breached its duty of fair representation when it conspired with Arlington Park to make a sham of its grievance procedure, thereby allowing Richards' allegedly unreasonable discharge to stand. These actions on the part of Local 134 and Arlington Park allegedly violate section 301(a) of the

Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). The district court dismissed Richards' suit, relying on three alternative grounds. First, the court found that it did not have subject matter jurisdiction over Richards' claim. Second, the court held that Richards' claim was barred by the applicable statute of limitations. Third, the district court found that Richards had failed to exhaust intra-union remedies. Because we find each of these grounds unpersuasive, we reverse on the first two grounds and remand for further findings on the third ground.

Section 301(a) of the LMRA, which gives the federal courts jurisdiction over disputes involving collective bargaining agreements, provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The jurisdiction of the National Labor Relations Board (NLRB) is somewhat different. Under the National Labor Relations Act the NLRB "is empowered ... to prevent any person from engaging in any unfair labor practice ... affecting commerce." 29 U.S.C. § 160(a). In its discretion, however, the NLRB may decline to exercise its jurisdiction when it has determined that "the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction." 29 U.S.C. § 164(c)(1). The NLRB has consistently declined to exercise jurisdiction over the horseracing industry. *See New York Racing Ass'n v. NLRB,* 708 F.2d 46, 48 (2d Cir.) (citing 29 C.F.R. § 103.3 (1982)), *cert. denied,* 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983). At least two circuits have held that the NLRB's decision to decline such jurisdiction is unreviewable by the courts. *See Retail, Wholesale & Dept. Store Union v. NLRB,* 745 F.2d 358, 362–63 (6th Cir.1984);

*New York Racing,* 708 F.2d at 57. The district court reasoned that since the NLRB had declined to exercise jurisdiction on the grounds that horseracing did not "affect commerce," it should defer to the NLRB's expertise in reaching that conclusion. The court then held that it did not have jurisdiction over Richards' complaint. In so holding, the district court relied on two district court opinions which held that federal courts must decline to exercise jurisdiction under section 301(a) of the LMRA if the NLRB has declined to exercise its jurisdiction over a particular industry. *See San Juan Racing Ass'n v. Labor Relations Board of Puerto Rico,* 532 F.Supp. 51 (D.P.R.1982); *Independent Ass'n of Pari-Mutuel Employees v. Gulfstream Park Racing Ass'n, Inc.,* 407 F.Supp. 855 (S.D.Fla.1976). Although the Fifth Circuit in *Pari-Mutuel Clerks Union v. Fair Grounds Corp.,* 703 F.2d 913, 918 (5th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983), had specifically rejected the holdings in *San Juan Racing* and *Gulfstream Park,* the district court refused to follow *Fair Grounds,* reasoning that "no other court, to date, has followed or adopted the reasoning of the *Fair Grounds* case." It is true that no other court has followed *Fair Grounds.* However, no other circuit court has addressed the issue presented in *Fair Grounds.* We will now do so.

As the well-reasoned *Fair Grounds* opinion points out, the LMRA establishes two methods for promoting industrial stability: (1) private enforcement of collective bargaining agreements through section 301 and (2) government sanctions for unfair labor practices through the NLRB. *Fair Grounds,* 703 F.2d at 918. When breach of a collective bargaining agreement constitutes an unfair labor practice, the courts' jurisdiction to decide the dispute overlaps the jurisdiction of the NLRB. *Id.* The courts' jurisdiction and the NLRB's jurisdiction cover suits "affecting commerce." *Id.* Although the outer limits of the jurisdiction of the NLRB and the courts may be the same (*i.e.,* the

limits of the Commerce Clause), it does not follow that the courts are limited by the NLRB's decision to decline jurisdiction. As noted above, the NLRB is given the discretion to exercise less than its authorized jurisdiction. *See* 29 U.S.C. § 164(c)(1). Congress has not given the federal courts similar discretion. *Fair Grounds*, 703 F.2d at 918 (citing *IBEW Local 1501 v. American Totalisator Co.*, 529 F.Supp. 419, 421 (D.Md.1982)). Because Congress has failed to give the courts similar discretion, we hold that if the statutory requirements of section 301 are satisfied, a federal court must exercise the authority granted by that section to hear labor contract disputes. *Fair Grounds*, 703 F.2d at 918.

■ Our conclusion here is supported by the recognition that the Board when deciding whether to exercise jurisdiction will not simply look to whether a particular commercial enterprise "affects commerce." For example, in declining to exercise jurisdiction over the racing industry, the NLRB found that there was already extensive state regulation of the industry, and that the NLRB was unable to extend its jurisdiction without aggravating its "already critical backlog of work." *New York Racing*, 708 F.2d at 48. Reliance on these factors may be appropriate because of the Board's broad discretion to decline jurisdiction over labor disputes "where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction." 29 U.S.C. § 164(c)(1). However, because Congress specifically provided the NLRB with a power to decline jurisdiction, a power that the inferior federal courts do not normally have, we hold that the district court improperly deferred to the NLRB's decision not to exercise jurisdiction over the horseracing industry.

■ Thus, it is necessary to determine whether horseracing is an "industry affecting commerce." Section 501(1) of the LMRA defines that term to include "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." *Fair Grounds*, 703 F.2d at 919–20 (quoting 29 U.S.C. § 142(1)). The court in *Fair Grounds* found that horseracing "clearly" is an industry affecting commerce. *Id.* at 920. We agree with the conclusion reached by the Fifth Circuit and hold that the district court must exercise jurisdiction over this case.

We also note with some concern the district court's failure to adopt the decision of the Fifth Circuit. Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight. This is especially true when they specifically reject decisions from other district courts that the district court seeks to rely on. In addition, in this case, the Fifth Circuit relied in part on a district court decision that had also rejected the reasoning of the district court decisions which supported the view of the district court here. In short, we simply ask the district courts to show appropriate deference before rejecting the direct authority of a sister circuit. *Cf.* Circuit Rule 16(e) (a proposed opinion that would create a conflict between the circuits must be circulated among the active members of this court to determine whether a rehearing in banc is necessary).

■ Alternatively, the district court held that Richards was barred by the six-month statute of limitations period applicable to hybrid § 301/fair representation claims. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). It reasoned that since Richards had been discharged on July 27, 1984, and did not file suit in the district court until January 29, 1985, the cause of action was barred. The district court misconstrued when the cause of action accrues in a hybrid § 301/fair representation claim. The cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance. *See Del-*

*Costello,* 462 U.S. at 155, 172, 103 S.Ct. at 2285, 2294 (accruing cause of action from when joint union-management committee's decision became final rather than from time of plaintiff's discharge); *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir.1983) (applying due diligence test to determine when no further action will be taken on a grievance), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Here the earliest accrual of plaintiff's cause of action was when he filed his grievance. Since plaintiff's grievance was filed on August 5, 1984, and the complaint was filed on January 29, 1985, before the expiration of the six-month limitations period, it is clear that appellant's action is not time-barred.

The district court also held that it was necessary to dismiss Richards' suit because he had failed to exhaust intra-union remedies. Local 134 and Arlington Park argue on appeal that the district court was correct in so holding because the constitution of the International Brotherhood of Electrical Workers allows a member of a Local to seek review from the International Union when the member believes that the local union has failed to represent him properly. Neither party argues that Richards has not effectively exhausted his remedies at the local level. Exhaustion of intra-union appeals is not required, however, if the plaintiff can show any one of the following situations: first, union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, the internal union procedures would be inadequate to either reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, exhaustion of internal appeals would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits. *Clayton v. International Union, UAW,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981); *see also Bassett v. Local Union No. 705,* 773 F.2d 932, 935 (7th Cir.1985). As in *Clayton,* the plaintiff here seeks reinstatement from his employer and monetary relief from both his employer and his union. *Clayton,* 451 U.S.

at 690, 101 S.Ct. at 2095. In *Clayton,* the Court examined the collective bargaining agreement at issue there and concluded that the UAW could not reinstate Clayton nor reactivate his grievance. *Id.* at 691, 101 S.Ct. at 2096. The Court found that the agreement was similar to most other collective-bargaining agreements that preclude the union from pursuing further grievance procedures such as arbitration unless it adhered to some rather strict time limits. *Id.* at 691 n. 18, 101 S.Ct. at 2096 n. 18. The Court held that a collective-bargaining agreement containing such restrictions rendered inadequate any relief available through internal union procedures. *Id.* at 691–92, 101 S.Ct. at 2096–97. The record on appeal does not contain the collective bargaining agreement. Therefore, we find it necessary to remand to the district court to determine whether the collective bargaining agreement at issue here precludes the local union from reinstating a grievance procedure against an employer even if a plaintiff is successful in appealing the local union's decision to the international union.

If the collective-bargaining agreement allows reinstatement of the withdrawn grievance, it will be necessary for the district court to consider whether either of the other two situations discussed in *Clayton* apply to this case. In addition, it may be necessary for the district court to consider what impact, if any, certain other facts may have on the exhaustion requirement. For example, the alleged failure of Local 134 to provide the plaintiff or his attorney a copy of the collective bargaining agreement may have some impact. The district court will be able to assess such issues more fully on remand.

In summary, we hold that the district court does have jurisdiction over Richards' claim and that the applicable statute of limitations does not bar him from pursuing that claim. We also remand to the district court to reconsider its holding regarding the exhaustion requirement in light of *Clayton v. International Union, UAW,*

451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).