**MOTION PICTURE PROJECTIONISTS & VIDEO TECHNICIANS, LOCAL 110, I.A.T.S.E. AND M.P.M.O. OF the UNITED STATES AND CANADA, Plaintiff,**

v.

**FRED CORPORATION, d/b/a Village Theatre, Defendant.**

No. 93 C 6266.

United States District Court, N.D. Illinois, E.D.

Feb. 17, 1994.

**MEMORANDUM ORDER AND OPINION**

MAROVICH, District Judge.

Plaintiff Motion Picture Projectionists & Video Technicians, Local 110, I.A.T.S.E and M.P.M.O. of the United States and Canada ("Union") is a voluntary unincorporated labor organization representing motion picture projectionists employed by certain motion picture theatre owners in Chicago and its suburbs. Defendant Fred Corporation, d/b/a the Village Theatre, ("Employer") is a corporation with its principal place of business in Chicago, Illinois. Local 110 filed a Complaint against Defendant under Section 301 of the Labor Management Relations Act, 29

U.S.C. § 185(a) seeking damages of an unknown amount for breach of contract. Defendant now moves this Court to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Should the Court grant jurisdiction, Defendant moves to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, this Court grants Defendant's motion to dismiss.

*FACTUAL BACKGROUND*

Local 110 and the Employer entered into a collective bargaining agreement ("Agreement") which covered projectionists employed at the Village Theatre from September 1, 1988 to August 31, 1992. The Agreement provides that it remains in effect from year to year unless either party gives written notice of termination sixty to ninety days before the Agreement's expiration. Neither party gave notice of termination prior to July 3, 1993 and thus, the Agreement was extended for the periods September 1, 1992 through August 31, 1993 and September 1, 1993 through August 31, 1994. The Agreement further provides that it is binding on the Employer, Union and their successors, and if the Employer transfers any of its interest in the theatre, the successor shall be advised of the acceptance and obligations of the Agreement and be bound by its terms.

For the duration of the Agreement the Village Theatre employed one full-time permanent projectionist, John Taturka. Over a three year period, four additional part-time projectionists alternatively substituted for the full-time projectionist while he was on layoffs directed by the Union. While substituting for Mr. Taturka, the part-time projectionists performed the same work, at the same hours and location, on the same equipment and received the same pay and benefits as the full-time projectionist. These lay-offs averaged a total of six weeks per year to provide employment and earnings for the part-time projectionists. In 1992, one part-time projectionist worked a total of eight weeks.

On July 1, 1993 the Employer sold the Village Theatre to a successor within the meaning of the Agreement. The parties agree and stipulate that the Employer has failed to comply with the terms and conditions of the agreement by not informing the successor of the existence of the Agreement or requiring that the purchaser accept the obligations set forth in the Agreement. On July 9, 1993 the Employer repudiated the Agreement. Union 110 claims that it is entitled to damages resulting from loss of employment, wages, benefits and seniority by employees covered by the Agreement. Union 110 now has brought this action to collect these damages from the Employer.

## DISCUSSION

### I. *MOTION TO DISMISS UNDER 12(b)(1)*

As a preliminary matter, the Court wishes to address the issue of the permissible scope of our inquiry in deciding a motion under Fed.R.Civ.P. 12(b)(1), as opposed to Fed.R.Civ.P. 12(b)(6). Plaintiff argues that the Court is limited to the factual allegations of the Complaint and that if the Court relies on the affidavit of Robert Taylor the motion should be treated as one for summary judgment pursuant to Fed.R.Civ.P. 12(b). Plaintiff, however, appears to ignore the fact that Defendant's motion is brought under both 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

 It is true that when considering a motion to dismiss the Court must accept the well-pleaded factual allegations of the complaint as true and interpret all reasonable inferences in favor of the plaintiff. *See, e.g., Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993). However, these statements standing alone do not reflect the extent of plaintiff's burden when faced with a motion, such as the one here, that attacks the factual basis for jurisdiction under Fed.R.Civ.P. 12(b)(1). Under these circumstances, it is well-settled that once defendant questions jurisdiction, the plaintiff cannot rest on the pleadings. *See, e.g., NAACP v. American Family Mut. Ins. Co.,* 978 F.2d

287, 293 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993); *Schaefer v. Transportation Media, Inc.,* 859 F.2d 1251, 1253–54 (7th Cir.1988). As the Seventh Circuit noted in *Capitol Leasing,* "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. 999 F.2d at 191 (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979)); *see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Rennie v. Garrett,* 896 F.2d 1057, 1057–58 (7th Cir.1990).

In the present situation, however, it is not necessary for the Court to rely on the affidavit of Robert Taylor attached to the motion to dismiss. Both parties agree in their respective pleadings that there was only one permanent employee and only disagree as to the status of the substitute employees. Thus, in evaluating whether to grant the motion to dismiss, the Court does not rely on this affidavit.

### *Scope of the Court's Subject Matter Jurisdiction*

 Plaintiff claims that this district court has subject matter jurisdiction predicted on Section 301 of the 1947 Labor Management Relations Act. This section states, in part:

a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter, or between any such labor organizations, may be brought in the district court of the United States having jurisdiction of the parties, without regard to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 makes collective bargaining contracts judicially enforceable and has been interpreted to make the law applicable to suits to enforce such contracts under federal common law. *LaBuhn v. Bulkmatic Transport Company,* 865 F.2d 119, 120 (7th Cir.1988).

Defendant argues, however, that because Village Theatre had only a single permanent employee, section 301's jurisdictional grant is not applicable. Defendant cites the National Labor Relation Board ("Board") decision in *Stack Electric*, 290 N.L.R.B. 575, 577 (1988) in which the Board stated: "It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the [National Labor Relations] Act, may withdraw recognition from a union, repudiate its contract with the union ...", to illustrate the Board's long-standing policy to exclude single employee bargaining units from the scope of its jurisdiction. Defendant urges this Court to adopt a jurisdictional policy similar to that of the Board.

The jurisdiction of the Board, however, is different from that of a district court. *Richards v. Local 134, I.B.E.W.*, 790 F.2d 633, 635 (7th Cir.1986). The Labor Management Relations Act has established two methods for promoting industrial stability: (1) private enforcement of collective bargaining agreement through section 301 and (2) government sanctions for unfair labor practices through the NLRB. *PariMutuel Clerks Union v. Fair Grounds Corp.*, 703 F.2d 913, 918 (5th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983). And, although the outer limits of the Board and the courts may be the same, it does not follow that district courts are limited by the Board's decision to decline jurisdiction. *Richards*, 790 F.2d at 636. "If the statutory requirements of section 301 are satisfied, a federal court must exercise the authority granted by that section to hear labor contract disputes." *Id.* (citing *PariMutuel Clerks Union*, 703 F.2d at 918).

In addition, the Ninth Circuit previously has rejected Defendant's jurisdictional contention in a similar case. *See General Teamsters Union Local No. 174 v. Trick & Murray, Inc.*, 828 F.2d 1418 (1987). In *Trick & Murray*, an employer repudiated a collective bargaining agreement by unilaterally withdrawing its recognition of the union, contending that the bargaining unit contained only one employee. *Id.* at 1419. The union filed an unfair labor practice charge with the Board but the Board refused to issue a complaint, invoking its longstanding policy of refusing to assert jurisdiction over representational disputes involving bargaining units with less than two members. *Id.* Relying on two of its earlier decisions, the Ninth Circuit expressly held that "a district court can exercise jurisdiction over an action brought under section 301 even though it involves a contract with a labor organization representing less than two employees." 828 F.2d at 1420.

The Seventh Circuit has directed its district courts to give substantial weight to direct authority of a sister circuit. *Richards v. Local 134, International Brotherhood of Electrical Workers*, 790 F.2d 633, 636 (7th Cir.1986). Plaintiff argues that the collective bargaining unit comprised more than one employee, however, this Court does not need to decide that issue to determine whether to dismiss for lack of jurisdiction. Given the separate jurisdictional grants of the Board and the district courts, and the Seventh Circuit's directive to award deference to a sister circuit, this court denies the motion to dismiss for lack of jurisdiction.

II. *MOTION TO DISMISS UNDER 12(b)(6)*

In support of the motion to dismiss, Defendant asserts that if the Court grants jurisdiction, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Defendant contends that there was only one permanent full-time employee and the single employee bargaining unit constitutes a complete defense pursuant to the reasoning of the Board in *Stack Electric*.

When considering a motion to dismiss, the court assumes the truth of all well-pled factual allegations and makes all possible reasonable inferences in favor of the plaintiff. *See, e.g., Capitol Leasing Co.*, 999 F.2d at 191. A court should not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Ross v. Creighton University*, 957 F.2d 410, 413 (7th Cir.1992); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). Also,

plaintiff does not need to set forth detailed pleadings equivalent to proof of its claims. With these standards in mind, we now consider Defendant's motion to dismiss on 12(b)(6) grounds.

### Single Employee Bargaining Unit

Under the parties' Agreement, because neither party gave notice of termination prior to July 3, 1993, the Agreement was in effect when the Employer transferred its interest in the Village Theatre. The Employer violated the Agreement by selling the business without requiring the successor to accept the terms and obligations of the agreement, unless this Court, guided by the Board's rationale, determines that the Union was a single employee bargaining unit.

 The Board has long recognized the principle that collective bargaining presupposes that there is more than one eligible person who desires to bargain. *Oscar David McDaniel & Int'l Bhd. of Elec. Workers,* 313 N.L.R.B. No. 11, (1993); *Luchenbach Steamship Co.,* 2 N.L.R.B. 181, 193 (1936). The Board also has acknowledged that if it is not empowered to certify a one-man unit, it must follow that the Act precludes the Board from directing an employer to bargain with respect to such a unit. *Foreign Car Center,* 129 N.L.R.B. 319, 320 (1960). Accordingly, the Board has expressly stated that an employer employing "one or fewer" permanent employees may withdraw recognition from a union, repudiate its contract with the union or unilaterally change employees' terms and conditions of employment" without violating Section 8(a)(5) of the Act. *Stack Electric* 290 N.L.R.B. at 577. Thus, adopting Board's reasoning, if Union 110 represented only one or fewer employees, the Employer's repudiation of the Agreement was valid.

 Both parties agree that the Village Theatre only had one full-time position, filled by projectionist John Takurka. However, Union 110 contends that the contract covered two employees, one full-time employee plus an additional part-time employee who regularly worked in place of the full-time employee when the latter was off of work due to union directed layoffs. The pivotal issue here is whether these substitute employees negate the single employee bargaining unit.

The Seventh Circuit has not addressed whether substitute employees of a full-time employee constitute a second employee and the Court looks to Board decisions for guidance. The Board has indicated that only permanent employees are considered in determining the number of employees in the bargaining unit for purposes of the single employee rule. *See Stack Electric,* 290 N.L.R.B. at 577. Also, the critical inquiry for the Board is whether a purported single-employee unit is a stable one. *Wilson & Sons Heating,* 302 N.L.R.B. 802, 803 (1991); *Oscar David McDaniel,* 313 N.L.R.B. No. 11. For example, in *Wilson & Sons Heating,* the employer employed one permanent employee only for a nine month period, but at all other times during the several year long contract more than one employee was employed. 302 N.L.R.B. at 802–03. The Board concluded that the Respondent's reduction in the size of the bargaining unit to a single employee was only a temporary measure and that there was no stable one-man unit. *Id.* at 803.

Similarly, in *Stack Electric,* several of the respondents had employed employees *in addition* to their one permanent employee for certain periods during the year. 290 N.L.R.B. at 577. However, the Board concluded that despite these occasional additional employees, at all material times the units consisted of no more than a single employee. *Id.* at 578. *Stack Electric* relied on *D & B Masonry.* 275 N.L.R.B. 1403 (1985). In *D & B Masonry,* the Board concluded that employees employed on an intermittent basis (in addition to one permanent full-time employee) for a total of 13 months during a period of 19½ months were not sufficient to constitute a permanent and stable work force that would require the respondent to bargain. *Id.*

In the present case, only one employee was working at any given time. The additional projectionists were merely alternative substitutes for the permanent projectionist for a total of approximately six weeks per year. Given the Board's refusal to allow *additional* employees, who worked for longer periods of time than the substitute pro-

jectionists here, to defeat a single-man unit, an employee simply *substituting* for a permanent employee for several weeks does not negate a stable and permanent one-man unit. As Plaintiff points out, if employees occasionally substituting for a permanent employee were found to constitute an additional employee, a union could simply mandate, as Local 110 did, a layoff policy for its union members in order to prevent an employer from qualifying for the single employee rule. Certainly the rule's protection is not that precarious.

Union 110 states that because the part-time employees performed the same work, with the same equipment and supervision as the full-time employees, the part-time projectionists share a community of interest with Defendant's full-time projectionist and must be included in the bargaining unit. In support of their contentions, Union 110 cites two Board decisions in which the Board held that on-call employees are included in the bargaining unit. *See V.I.P. Movers, Inc.*, 232 N.L.R.B. 14 (1977) (on-call employees who averaged at least 4 hours per week on a regular though unscheduled basis, and performed the same tasks, in the same areas, and under the same supervision as the other employees were included in the bargaining unit and eligible to vote.); *Davison–Paxon Company*, 185 N.L.R.B. 21, 23–24. However, in these cases, the Board's inquiry was not whether these additional employees eliminated an employer from the purview of the rule as each employer already employed several permanent employees. 232 N.L.R.B. at 14; 185 N.L.R.B. at 21. For example, in *Davison–Paxon Company* the Board found that the extra and contingent department store employees who regularly averaged four hours of work per week in the quarter preceding the election "had a sufficient community of interest for inclusion in the unit and may vote in the elections." 185 N.L.R.B. at 24. The Board has stated that when the focus of the inquiry is whether the employer maintains a stable one-man unit, "the individual voting eligibility standards ... are not controlling." *Oscar David McDaniel,* 313 N.L.R.B. No. 11, n. 4.

In addition, these cases are factually distinguishable. The oncall employees hired in

*V.I.P. Movers, Inc.* were individuals willing to work at least 15 hours per week on short notice, and although they worked on a frequent though unscheduled basis, they still averaged four hours of work a week. 232 N.L.R.B. at 14. Similarly, in *Davison–Paxon Company,* the only contingent or extra employees included in the unit and eligible to vote were the employees who regularly averaged 4 hours or more of work per week. Thus, even where the Board has included part-time employees in the bargaining unit, it has done so with employees who are stable and regular, albeit employed intermittently. The various substitute projectionist in this present case were not regular employees but were alternatively selected to replace the permanent projectionist when he was laid-off for several weeks during the year.

Therefore, the four substitute projectionists do not remove the Employer from the purview of the single employee rule. As it is permissible to repudiate a collective bargaining agreement where the bargaining unit includes only one employee, Union 110 has failed to state a claim upon which relief may be granted.

### CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6).