Thelma R. HAYES, Plaintiff,

v.

Otis R. BOWEN, Defendant.

Civ. A. No. 83–2179–OG.

United States District Court, District of Columbia.

Dec. 19, 1988.

---

**12.** Burns' abstention request was not included in its motion, but was instead raised in its supporting papers.

Paula D. Scott, Washington, D.C., for plaintiff.

Susan A. Nellor, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

This action is brought pursuant to 42 U.S.C. § 405(g) and seeks review of the decision of the Secretary of Health and Human Services denying plaintiff's application for Social Security disability insurance benefits.

## I. BACKGROUND

The background of this case is reviewed in detail in this Court's prior opinion in *Hayes v. Bowen*, 643 F.Supp. 770 (D.D.C. 1986):

Plaintiff is a sixty-[three]-year-old woman with a ninth-grade education. Her work experience includes employment as an office cleaner, domestic, stockroom clerk and, from 1966 to 1973, as a stock clerk in a drug store. Plaintiff has not held a job since 1973.

On May 19, 1981, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income ("SSI"). Plaintiff alleged that she had been disabled since January, 1975 due to obesity, a hernia, hypertension, stomach problems, and arthritis. Since claimant last met the special earnings requirements of the Social Security Act on March 31, 1978, she is entitled to disability benefits only if she is found to have been disabled prior to that date.

During initial administrative consideration of her claim, plaintiff was examined by several doctors who reported that she was obese and was experiencing hypertension, varicose veins, degenerative arthritis, a sliding hiatal hernia, and irritable bowel syndrome. Several pre–1978 medical reports also were examined. On December 8, 1982, an Administrative Law Judge ("ALJ") found that plaintiff was suffering from obesity, degenerative arthritis and pain resulting therefrom, hypertension, venous insufficiency, and irritable bowel syndrome and concluded that plaintiff was "disabled" as of May 19, 1981 for purposes of receiving SSI payments. The ALJ also concluded, however, that plaintiff was not entitled to disability benefits because she had not established a "severe" impairment, as defined in 20 C.F.R. § 404.1520(c), before March 31, 1978. *See* A.R. 24–25. On May 23, 1983 the Appeals Council denied review of the latter decision, and the Secretary's decision denying disability benefits became final. *See* A.R. 3.

Plaintiff thereafter sought review of the denial, and this Court reversed and remanded the case to the Secretary. *See Hayes v. Heckler*, No. 83–2179 (Oct. 15, 1984). The Court held that the Secretary had failed to consider plaintiff's credible subjective testimony on the onset of her disability and had failed to elicit evidence from consulting physicians on the question of onset. *Id.*

On remand, the Appeals Council vacated its prior denial of plaintiff's petition for review and remanded the case to an ALJ. Additional medical evidence was received, and a supplemental hearing was held. On September 26, 1985, the ALJ concluded that plaintiff was not "disabled" prior to March 31, 1978 because she retained the functional capacity to perform her past work as a drug store clerk. A.R. 256–57. By opinion dated March 7, 1986, the Appeals Council adopted the findings and conclusions of the ALJ, and the Secretary's denial of disability benefits became final. *See* A.R. 227.

643 F.Supp. at 770–71.

On August 11, 1986, this Court remanded this case to the Secretary a second time for reconsideration of plaintiff's application. *Id.* at 774. The Court's review of the record at that time led it to conclude that the Secretary had erred first, by failing to give "serious and fair consideration" to plaintiff's testimony, *id.* at 773; second, by failing to give adequate weight to the opinions of Dr. Salama, one of plaintiff's treating physicians, and by "failing to provide specific and legitimate reasons for reject-

ing his opinions," *id.* at 774; and third, by failing to comply with the Court's instructions "to obtain opinions from the consulting physicians as to the onset date of her ailments." *Id.*

On October 8, 1986, the Appeals Council vacated its decision of March 7, 1986 and the September 26, 1985 decision of the Administrative Law Judge and remanded this case to the Secretary of Health and Human Services for further administrative action consistent with this Court's August 1986 opinion. A supplemental hearing was held before Administrative Law Judge John W. Taggart ("the ALJ") on July 15, 1987, in Washington, D.C., at which claimant was represented by counsel.

The ALJ issued a recommended decision on November 20, 1987, in which he made twelve findings that he recommended be adopted by the Appeals Council. *See* A.R. at 411–12. The ALJ also recommended that "claimant is not entitled to a period of disability or to disability insurance benefits under section 216(i) and 223 respectively, of the Social Security Act." A.R. at 412. On February 18, 1988, the Appeals Council adopted the findings and conclusions in the recommended decision and determined that claimant was "not entitled to a period of disability or to disability insurance benefits under the Social Security Act...." A.R. at 387.

## II. DISCUSSION

### A. *Appropriate Standard of Review*

The Court must determine whether, on the basis of the entire record, the Secretary's decision is supported by "substantial evidence." *See Brown v. Bowen,* 794 F.2d 703, 705 (D.C.Cir.1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "If substantial evidence exists, then the Secretary's factfinding is conclusive." *Brown v. Bowen,* 794 F.2d at 705.

### B. *Disability Evaluation in this Case*

The Secretary of Health and Human Services has established a five-step procedure for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1987). In this case, the first four steps are not at issue. Nonetheless, a brief review of plaintiff's disability claim is appropriate.

The first step of the evaluation process requires the Secretary to consider whether a claimant is involved in "substantial gainful activity." *See* 20 C.F.R. § 416.920(b). The Secretary found that "claimant has not engaged in substantial gainful activity since 1973." A.R. at 411 (finding no. 2). Second, the Secretary must consider whether a claimant has "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 416.920(c). At this step, a claimant has the burden of showing that he is disabled. *See Murray v. Heckler,* 624 F.Supp. 1156, 1158 (D.D.C.1986); *see also Bianchi v. Secretary of Health and Human Services,* 764 F.2d 44, 45 (1st Cir.1985) (per curiam). It appears clear from the record that the ALJ determined, and the Secretary adopted, the finding that the plaintiff in fact met her burden of demonstrating that she had a severe impairment.[1]

---

1. The ALJ does not expressly state in his recommended findings that claimant has established that she had a severe impairment prior to March 31, 1978. The Court finds, however, that the only conclusion with which the ALJ's findings are consistent is that plaintiff had a severe impairment prior to the last date on which she met the disability insured status requirements of the Social Security Act.

   The ALJ's third recommended finding states: "The medical evidence establishes that the claimant has obesity, osteoarthritis, varicose veins, hypertension and ventral hernia,...."

A.R. at 411. Notwithstanding the qualifying language following that phrase (which indicates that plaintiff does not meet the requirements of being considered disabled without further inquiry), the Court interprets this statement as establishing that plaintiff suffered from a severe impairment prior to March 31, 1978. This interpretation is consistent with the analysis set forth in the ALJ's opinion. *See* A.R. at 409 ("It is evident that claimant did suffer from obesity, hypertension, a ventral hernia and some degree of arthritis prior to her date last insured.").

Third, the Secretary must determine whether the impairment or combination of impairments "meets the durational requirement and is listed in Appendix 1 or is equal to a listed impairment(s)...." 20 C.F.R. § 416.920(d). If so, a claimant is considered disabled without further consideration of age, education, or work experience. *Id.* In this case, the ALJ expressly stated that the plaintiff "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4." A.R. at 411 (finding no. 3).

The fourth step of the process requires the Secretary to determine whether a claimant has the ability to perform work he has done in the past. *See* 20 C.F.R. § 416.920(e). In this case, the ALJ clearly indicated, in finding no. 6, that "[t]he claimant is unable to perform her past relevant work as a stock clerk or office cleaner." A.R. at 411. The Court finds the Secretary's conclusions in the first four steps of the procedure for evaluating plaintiff's disability claim to be supported by substantial evidence.

The fifth step of the evaluation procedure requires the Secretary to determine whether the claimant is capable of performing any other work by considering the claimant's "residual functional capacity and [her] age, education, and past work experience." 20 C.F.R. § 416.920(f). At the fifth step, "the Secretary has the burden of showing that the claimant is capable of performing gainful work." *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C.Cir.1987).

## C. *Burden of Proof at Step Five*

The Court finds that the Secretary erred at the fifth step of the evaluation by failing to assume the burden of proof to demonstrate that the plaintiff had residual functional capacity to perform other work. Al-

though neither the ALJ nor the Appeals Council expressly stated who had the burden of proof at step five, the analysis as well as the tenor of those opinions indicates that the burden remained on the plaintiff in step five to demonstrate that she was unable to perform light work. As this Court reads *Smith v. Bowen*, 826 F.2d 1120 (D.C. Cir.1987), the Secretary's decision must be remanded.

The Secretary argues that the burden of demonstrating disability is always on the claimant and that accordingly, "the claimant must establish his residual functional capacity." Defendant's Opposition to Plaintiff's Motion for Summary Judgment, at 2. The Secretary asserts that "[t]he only burden that 'shifts' to the Secretary is that of producing evidence of the existence of other jobs that the claimant can perform...." *Id.* Such an interpretation clearly is inconsistent with the language used in *Smith v. Bowen*, 826 F.2d 1120 (D.C.Cir.1987), where the Court stated that "[t]he inquiry therefore must proceed to the fifth step, in which the Secretary has the burden of showing that the *claimant is capable of performing gainful work.*" *Id.* at 1122 (emphasis provided). The Court did not limit the Secretary's burden to demonstrating the existence of work in the national economy, although the availability of jobs in the national economy was the primary issue in that case. The Eighth Circuit squarely addressed the extent of the Secretary's burden in *Lewis v. Heckler*, 808 F.2d 1293 (8th Cir.1987). That Court stated:

It is well established that once a claimant proves to the ALJ that the claimant's impairments prevents him from returning to his past relevant work, the burden of proof shifts to the Secretary, who then has a duty to establish that the

---

The Court also finds that the ALJ's conclusion that "claimant has the residual functional capacity to perform the full range of light work," A.R. at 411 (finding no. 7) can only be consistent with a prior finding that plaintiff was severely impaired. In properly evaluating a disability in accordance with 20 C.F.R. § 416.920, the Secretary would not even reach the issue of a claimant's residual functional capacity (which is con-

sidered in step five) unless the Secretary had first determined that the claimant in fact had a severe impairment (in step two). Therefore, to the extent the Secretary's determination in step two of the evaluative process is ambiguous, the Court finds that the Secretary determined that plaintiff had a severe impairment prior to March 31, 1978.

claimant is not disabled within the meaning of the Social Security Act.... In cases where the ALJ fails to expressly recognize this shift, we will assume that the burden of proof improperly remained on the claimant to prove he or she was disabled and we will remand the matter for further proceedings unless the case is one in which the outcome should be clear regardless of who shoulders the burden of proof.

808 F.2d at 1297 (citations omitted). Although this circuit has not yet required the ALJ to expressly recognize in his written decision that the burden of proof has shifted to the Secretary at step five of the disability determination, the Court holds that the rule in this jurisdiction is that the burden of proof shifts to the Secretary at step five not only to establish the existence of jobs in the national economy, but also to establish that the claimant in fact can perform the available jobs.[2]

D. *Secretary's Determination of Claimant's Residual Functional Capacity*

■ The Court also finds that the Secretary's decision that claimant has the residual functional capacity to perform the full range of light work is not supported by substantial evidence. Light work is defined by the Secretary as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sit-

ting most of the time with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.* If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (1987) (emphasis provided). The first line of the definition indicates that the ability to perform the full range of light work includes the ability to lift up to 20 pounds.

In this case, most of the relevant evidence shows that plaintiff, prior to March 31, 1978, could not lift up to 20 pounds. The most striking evidence is the statement of Dr. Charles Abrams, a consultative physician who performed a gastroenterology consult on plaintiff on February 27, 1985. *See* A.R. 305–08. Dr. Abrams indicated that lifting and carrying were affected by plaintiff's right lower quadrant hernia and that plaintiff could lift and/or carry up to 10 pounds.[3]

Among his other findings, Dr. Abrams indicated that plaintiff had "a history of abdominal pain," for which "one must rule out incisional hernia as an etiology versus adhesions from previous operations." A.R. at 306. Dr. Abrams concluded, therefore, that the plaintiff had a history of abdominal pain; that she had an objective impairment consistent with her history of abdominal pain (*i.e.*, an incisional hernia); and

---

**2.** This interpretation is entirely consistent with the principle that a claimant bears the burden of demonstrating his disability. The burden shifts to the Secretary only after a claimant has established, at step one, that he is not working, 20 C.F.R. § 416.920(b); at step two, that he suffers a severe impairment, 20 C.F.R. § 416.920(c); and, at step four, that he does not have the ability to perform work he has done in the past, 20 C.F.R. § 416.920(e). *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987); *see also Travis v. Bowen,* 633 F.Supp. 264, 265 (D.D.C.1986) ("the burden of going forward shifts to the Secretary to prove that there is available some other kind of 'substantial gainful employment' that the claimant

can perform, once he establishes that his impairment is of such severity that it precludes him from performing his former work").

**3.** Dr. Abrams' completion of the sheet entitled "medical assessment of ability to do work-related activities (physical)" is unclear with respect to how frequently claimant can lift 10 pounds. He indicated "10 lbs restriction all day," but he checked neither the box marked "maximum occasionally" nor the box marked "maximum frequently." A.R. at 307. Additionally, he noted that "anything that increases intraabdominal pressure can aggravate a hernia." A.R. at 308.

that this impairment limited her ability to lift to a maximum of ten (10) pounds.

The administrative record is devoid of any medical evidence that directly contradicts Dr. Abrams' conclusions.[4]

Furthermore, the only evidence in the record appears to support that plaintiff's incisional hernia existed prior to March 31, 1978,[5] and that claimant experienced some abdominal pain prior to this date.[6] The Court finds that the record contains no evidence which would support the conclusion that plaintiff's incisional hernia was worse in 1985 (when she was examined by Dr. Abrams) than it was prior to the date plaintiff last met the special earning requirements of the Social Security Act.[7] In the absence of any evidence that plaintiff's incisional hernia was less of a disability in 1978 than it was in 1985, and in view of Dr. Abrams' uncontroverted conclusion that plaintiff, on account of this impairment, could lift a maximum of ten pounds, the Court finds that the Secretary's conclusion that plaintiff could perform the full range of light work is not supported by substantial evidence.[8]

■ One further point about the Secretary's finding with regard to plaintiff's incisional hernia and history of abdominal pain merits the Court's attention. The ALJ stated that "[t]he claimant did have a ventral hernia but the evidence indicates she declined surgical repair." A.R. at 409. In making this finding, the ALJ was presumably considering 20 C.F.R. § 416.930. That section states that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." *Id.* at § 416.930(a). It further provides that "[i]f you do not follow the prescribed treatment

4. Dr. Abrams' findings are not refuted by statements from other consultative or treating physicians. Neither Dr. Shugoll nor Dr. Griffin (the other consultative physicians) found that plaintiff was disabled by the existence of a ventral hernia. However, Dr. Abrams clearly was the expert called upon to assess the claimant's status with respect to her gastrointestinal complaints. Dr. Shugoll, an expert in cardiovascular medicine, examined the claimant only to determine whether she suffered from peripheral vascular disease; he concluded that she did not. A.R. at 309–13. Dr. Shugoll's statement dated April 15, 1985, indicates that he "performed only a limited vascular examination of Mrs. Hayes...." A.R. at 311. Dr. Shugoll's findings, therefore, are wholly consistent with Dr. Abrams' findings.

Dr. Griffin, an internist with special expertise in arthritis and rheumatism, also examined the plaintiff in February 1985. It is clear from his statement that the focus of his examination was the severity of the plaintiff's degenerative joint disease and the extent to which her range of motion was limited. A.R. 314–19. Dr. Griffin's summary of his physical examination of plaintiff does not even indicate whether he examined her abdomen. A.R. at 315. The Court does not find Dr. Griffin's failure to comment on plaintiff's ventral hernia to be evidence which refutes Dr. Abrams' findings.

5. The presence of an incisional hernia is documented in the notes of Dr. Cecilio Albo, dated July 6, 1975. A.R. at 198.

6. The notes of Dr. Benito D. Absalon, dated "12–77," indicate that plaintiff complained of abdominal pain at that time. A.R. at 199.

7. After this case was remanded by this Court in 1986, Administrative Law Judge Taggart asked Dr. Abrams to express an opinion concerning the "onset of the claimant's various conditions." A.R. at 444. Dr. Abrams responded, in a letter dated November 7, 1986, stating that "[a]ccording to my history [Mrs. Hayes'] disability began 1976...." A.R. at 445. On reviewing the ALJ's recommended decision, the Appeals Council found that "Dr. Abrams' statements [sic] that the claimant's disability began in 1976 is nothing more than a restatement of claimant's own allegation." A.R. at 386. The Appeals Council concluded, therefore, that "Dr. Abrams' [November 1986] statement does not support the claimant's allegations and is not entitled to any weight in deciding whether the claimant was disabled prior to March 31, 1978." The Court finds that the Appeals Council erred in rejecting Dr. Abrams' statement when the administrative record contains no medical evidence that would support any other conclusion.

8. The ALJ appears to have given excessive weight to one statement made by the plaintiff's daughter, Vanessa Hayes, to the effect that "during 1975, the claimant helped her mother in the farm by 'cutting trees around the pond'." A.R. at 410. *See* A.R. at 359–60 (testimony of Vanessa Hayes). The Court finds that this isolated reference to plaintiff's activity almost three years prior to her date last insured is not sufficient to refute the rest of the objective evidence in the record. Furthermore, the testimony of plaintiff's daughter, taken as a whole, strongly supports the conclusion that plaintiff could not perform light work. *See* A.R. at 355–64.

without a good reason, we will not find you disabled...." *Id.* at § 416.930(b). According to that section, therefore, if plaintiff's physician had prescribed surgery for her incisional hernia, and if plaintiff had refused surgery, any disability resulting from this impairment could properly be rejected by the Secretary.

On reviewing the administrative record, however, the Court finds no evidence to support the ALJ's assertion that the plaintiff declined to have surgical repair of her incisional hernia. The Court finds only three references in the record which are remotely applicable. First, a discharge summary from Medical College of Virginia Hospital dated December 17, 1974, indicates that plaintiff had a history of "fibroid tumors noted in 1968, but they were not bothering her and surgery was not advised." A.R. at 195. Second, the same discharge summary indicates that "[t]he patient was urged to stay in the hospital and have definitive treatment of the [pelvo-abdominal] mass.... However, she refused to stay in the hospital for definitive surgery at this time but promised to come back." A.R. at 196. Both of these references are to a pelvo-abdominal mass, which was presumptively diagnosed as leiomyomata uteri ("fibroids," in common parlance). It appears that plaintiff's incisional hernia had not yet appeared or had not yet been diagnosed. Clearly, plaintiff's refusal to undergo surgery for a wholly separate problem cannot preclude her from being

found disabled for an incisional hernia or from having her incisional hernia considered as a factor in her residual functional capacity.

The third reference to surgery appears in Dr. Abrams' original statement. A.R. at 305–06. He stated that it "[would] be recommended that she have a lower intestinal x-ray and proctoscopy to complete her work-up as well as a possible consultation with a surgeon regarding the repair of her hernia." A.R. at 306. This statement, however, was made almost seven years after the date on which plaintiff last met the special earnings requirements.[9] No other evidence exists to show that plaintiff was ever advised by her physician to have her incisional hernia surgically repaired or that she ever refused to do so.[10]

E. *Secretary's Determination Regarding Nonexertional Limitations*

■ The ALJ correctly stated that "[t]he regulations ... provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity." A.R. at 402 (citing 20 C.F.R. § 404.1545). *See Smith v. Bowen,* 826 F.2d 1120, 1122–23 (D.C.Cir.1987). The Court finds, however, that the ALJ's conclusion that "[t]here is no evidence of nonexertional limitations that significantly erode the range of light work she could perform," A.R. at 409, is not supported by substantial evidence. The Court's primary

9. It is questionable whether Dr. Abrams' recommendation, standing alone, would provide the Secretary with a basis on which to deny the plaintiff disability benefits in this case, even if it had occurred earlier in time. The language in 20 C.F.R. § 416.930(a) advises a disability claimant to follow treatment prescribed by "your physician." Dr. Abrams was never plaintiff's physician; he was only a consultant in this matter.

10. Defendant's counsel is unable to refer the Court to any reference in the record which specifically indicates that the claimant declined to have surgery. Defendant's counsel does draw the Court's attention to a reference in plaintiff's testimony where, in response to the question "Did they ever operate on the hernia?," she

responded "No." A.R. at 277. The Court finds that this interchange cannot be interpreted to mean that the plaintiff was advised to have surgery nor can it be interpreted to mean that she refused surgery.

Defendant's counsel also directs the Court's attention to a medical record entry from the Zacchaeus Medical Clinic dated 11–15–80 which reads "has peri-incisional hernia—will be evaluate [sic] a [sic] Georgetown Clinic." A.R. at 118. The Court finds that substantial speculation would be required to conclude on the basis of that passage that the plaintiff was advised to have surgery and that she refused. This medical record entry is not substantial evidence that would support the ALJ's conclusion that the plaintiff declined surgical repair.

concern is that the ALJ failed to address specifically whether claimant's hypertension may have caused her to suffer a nonexertional impairment in the form of headaches and dizziness, which, if present, properly should have been considered in evaluating claimant's residual functional capacity.

The ALJ concluded that plaintiff suffered from hypertension prior to her date last insured. A.R. at 409. This conclusion is supported by substantial evidence.[11] The ALJ also concluded that plaintiff did not meet the criteria for impairment of section 10.10B of the Listing of Impairment because her diastolic blood pressure readings were not persistently in excess of 100. A.R. at 407. The Court finds that this conclusion is also supported by substantial evidence. See 20 C.F.R. Part 404 Appendix 1 to Subpart P § 10.10. The ALJ also stated that "[t]here is no indication in the evidence before or after 1978 that the claimant's hypertension has resulted in end organ damage to the eyes, heart, kidneys or brain." A.R. at 408. The Court finds that this finding is supported by substantial evidence as well.

The ALJ, however, ends his inquiry about whether plaintiff suffers from any nonexertional disability as a result of hypertension at this point. In reviewing the plaintiff's 1974 medical records, the ALJ stated that plaintiff "complained of headaches and dizziness due to high blood pres-

sure...." A.R. at 404. The record also indicates that plaintiff complained of headaches on other occasions after March 31, 1978. See A.R. at 199 (notes of Dr. Benito D. Absalon dated August 7, 1978). In her testimony, plaintiff claims that she suffered from dizziness, see A.R. at 341, 344, and headaches, see A.R. at 346-47, although she was unable to state whether these symptoms were a result of her hypertension. Id.

As noted above, the Secretary properly concluded that the plaintiff had hypertension prior to March 31, 1978. At no point in the ALJ's analysis, however, does the ALJ address the frequency or severity of plaintiff's symptoms of headache and dizziness nor does he consider whether these symptoms were caused by plaintiff's hypertension. The Court finds, therefore, that the Secretary, by failing to consider these questions, erred in concluding that claimant's hypertension did not cause a nonexertional impairment.[12]

## III. CONCLUSION

Upon review of the record, the Court concludes that the Secretary erred by failing to assume the burden of proof at step five of the disability evaluation; by finding that the plaintiff could perform light work prior to March 31, 1978, when substantial evidence does not exist to support that conclusion; and by failing to properly consider whether plaintiff's hypertension

11. The record indicates that claimant's blood pressure was 160/100 in January 1975; 150/95 in December 1977; and 130/94 in August 1978. Therefore, two documented readings of elevated blood pressure were noted prior to the plaintiff's date last insured and one elevated blood pressure reading was documented a few months after her date last insured. See 1988 Report of the Joint National Committee on Detection, Evaluation, and Treatment of High Blood Pressure (U.S. Department of Health and Human Services, May 1988) at 3 (diastolic pressure of 90–104 classified as "mild hypertension" in adults age 18 years or older; classification based on the average of two or more readings on two or more occasions).

12. As noted above, the Secretary concluded that plaintiff's hypertension did not result in any end organ damage to the eyes, heart, kidneys or

brain. This finding, however, does not address whether the plaintiff suffered any complications of hypertension other than damage to these organs.

The Court finds that the record presently contains virtually no medical evidence that would either tend to prove or disprove that the plaintiff's headaches and dizziness were related to her hypertension. Although plaintiff's hypertension is documented on several records, it appears that neither plaintiff's treating physicians nor the consulting physicians ever addressed this issue. Accordingly, the Secretary may determine that further medical consultation is required to determine whether plaintiff's headaches and dizziness are related to plaintiff's hypertension and whether they constitute a nonexertional impairment.

caused her any nonexertional impairment in the form of headaches or dizziness. Accordingly, this case must be remanded to the Secretary for reconsideration of plaintiff's application. It is noted that this case is being remanded for the third time. Accordingly, the Court orders that these matters be reconsidered, *i.e.*, plaintiff's application for Social Security disability insurance benefits, within ninety (90) days of the date of the accompanying order.

## ORDER

Upon consideration of plaintiff's motion for judgment of reversal and defendant's motion for judgment of affirmance, the memoranda in support thereof and in opposition thereto, the oral arguments presented by counsel in open court, the entire record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 19th day of December, 1988,

ORDERED that plaintiff's motion for judgment of reversal be, and hereby is, granted; and it is further

ORDERED that defendant's motion for judgment of affirmance be, and hereby is, denied; and it is further

ORDERED that this case is remanded to the Secretary of Health and Human Services for reconsideration of plaintiff's application for Social Security disability insurance benefits; and it is further

ORDERED that the Secretary will reconsider plaintiff's application and report thereon within ninety (90) days of the date of this order.