Carolyn C. LIDY, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. IP88–965–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 9, 1989.

Order On Motion to Alter or Amend Judgment Aug. 27, 1990.

---

Charles J. Myers, Kokomo, Ind., for plaintiff.

Gerald A. Coraz, Asst. U.S. Atty., Indianapolis, Ind., for defendant.

## ORDER ON APPEAL OF SECRETARY'S DENIAL OF BENEFITS

McKINNEY, District Judge.

This social security appeal is before the Court on the Complaint of the plaintiff for review of the Secretary's denial of benefits. The issues raised have been briefed and are ready for resolution. For the reasons forth below, the Court hereby AFFIRMS IN PART and REMANDS IN PART this case to the Secretary for further proceedings at Step Five.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed for supplemental security income on August 30, 1985. This original application was denied on October 30, 1985, and no further appeal was taken. This former adjudication is thus *res judicata* for any allegation of disability prior to and including October 30, 1985. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Reynolds v. Bowen,* 844 F.2d 451, 454 (7th Cir.1988). A second application was filed on February 26, 1986, and was denied initially and on reconsideration. A hearing was then held before an Administrative Law Judge where plaintiff was represented by counsel.

Plaintiff was 39 years of age at the time of the hearing and has a ninth grade education. Her past employment was as a waitress, bartender, cook, and factory worker. She claims disability due to neck spasms, lumbosacral strain, disc disease, and borderline intelligence. She also suffers from psychological impairments including depression and anexoria nervosa. Plaintiff and two lay witnesses testified at the hearing on her behalf.

## II. THE SECRETARY'S DECISION

At the hearing, the ALJ was required to use the following five-step sequential procedure for evaluating plaintiff's claims:

1. If the claimant is doing substantial gainful activity, she is not disabled;
2. If the claimant does not have a severe impairment, she is not disabled;
3. If the claimant has an impairment or combination of impairments which is found in the Listings or is equal to a listed impairment, she is disabled;
4. If the claimant's residual functional capacity allows her to perform work she has done in the past, she is not disabled;
5. If the claimant cannot, in view of her residual functional capacity and his age, education, and past work experience, perform other work in the national economy, she is disabled.

20 C.F.R. §§ 404.1520, 416.920. In this case, the ALJ determined at Step 4 that the plaintiff could not perform her past relevant work as a waitress, bartender, cook, or factory feeder. However, at Step 5 the ALJ found that the plaintiff could perform the full range of unskilled sedentary work and was thus not disabled. The Appeals Council declined review, thus making the ALJ's ruling the final decision of the Secretary.

## III. DISCUSSION

### A. *General standards of review:*

The district court's function on review of the Secretary's findings is to determine whether the record as a whole supports the decision. 42 U.S.C. § 405(g). *Burnett v. Bowen,* 830 F.2d 731, 734 (7th Cir.1987). If the Secretary's findings are supported by substantial evidence in the record, the Court must affirm unless there has been an error of law. *Waite v. Bowen,* 819 F.2d 1356, 1360 (7th Cir.1987). Substantial evi-

dence is relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Burnett*, 830 F.2d at 734. Although courts cannot interject their own judgment for that of the Secretary, they "must not simply rubber stamp his decision in the absence of a critical review of the evidence." *Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir.1987).

■ The burden to prove disability is on the claimant through Step 4 of the adjudicative process. 42 U.S.C. § 423(d); *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980). However, the burden of proof is on the Secretary at Step 5 where the ALJ considers whether the claimant can do other work in light of her age, education, and past work experience. *McNeil*, 614 F.2d at 145; *Steward v. Bowen*, 858 F.2d 1295, 1297 n. 2 (7th Cir.1988). This burden shifting at Step 5 is not statutory, "but is a long-standing judicial gloss on the Social Security Act." *Walker v. Bowen*, 834 F.2d 635, 640 n. 3 (7th Cir.1987).

**B.** *The effect of failing to acknowledge the shifting burden of proof:*

■ In this case, the plaintiff's appeal is based entirely upon the failure of the ALJ to specifically "state ... and make clear that the burden of proof shifted to the government after he decided that the Plaintiff could no longer do her previous work." (Brief at 5). As acknowledged by the Secretary in his brief, a review of the ALJ's decision shows that the ALJ did not, in fact, specifically acknowledge the shift in burdens of proof at Step 5. The question, then, is whether this case should be remanded accordingly to ensure that the proper burden of proof is applied.

This is a pure question of law that has not been addressed by the Seventh Circuit.[1] Several other courts have reached the is-

sue, however, and have concluded that the failure to acknowledge the Step 5 burden of proof requires remand in most situations.

The Eighth Circuit, which is apparently the only court of appeals to address the question,[2] has consistently held that it "will not assume that the Secretary implicitly recognized the shift" in the burden of proof at Step 5. *Butler v. Secretary of Health and Human Services*, 850 F.2d 425, 426 (8th Cir.1988). The Eighth Circuit has reaffirmed its position on this issue on a number of occasions, *see, e.g., Bradshaw v. Heckler*, 810 F.2d 786, 789 (8th Cir.1987); *Lanning v. Heckler*, 777 F.2d 1316, 1317 (8th Cir.1985); *Jackson v. Schweiker*, 696 F.2d 630, 631 n. 1 (8th Cir.1983), although one judge of that court consistently dissents, reasoning that such an automatic rule is not required when the reviewing court is "able to ascertain whether the appropriate rule was in fact recognized and applied." *Butler*, 850 F.2d at 429 (Fagg, J. dissenting).

The Eighth Circuit makes an exception to its rule in "those rare instances where the outcome would be clear regardless of who shoulders the burden of proof." *Bradshaw*, 810 F.2d at 789; *Lanning*, 777 F.2d at 1317. Thus, in cases where the record shows that there is clearly no way the claimant could win at Step 5, the Eighth Circuit would not require a remand that would obviously be futile.

Other than the Eighth Circuit cases, this Court has located only one other reported decision addressing the question. In *Hayes v. Bowen*, 701 F.Supp. 857 (D.C.Cir. 1988), the district court found that neither the ALJ nor the Appeals Council had discussed the burden of proof at Step 5, *Id.* at 860, and the court further noted that the D.C. Circuit had not yet required ALJs to expressly recognize the shift in burdens in

---

1. Neither of the parties have proffered any Seventh Circuit authority addressing this narrow issue, and the Court has been unable to locate any such precedent on its own. The only case law on the matter was tendered by the Secretary, and that case law was adverse to the Secretary's position. The Court commends the Secretary's counsel for their candor in this respect.

2. Manual and computer searches have revealed no other circuit decisions on point. One authoritative text does not address the issue, *see* R. Francis, *Social Security Disability Claims* § 11.28 (1983) (noting only that the burden of proof shifts to the Secretary at Step 5), while another text notes only the Eighth Circuit holdings. *See* H. McCormick, *Social Security Claims and Procedures* § 645 (3d ed., 1989 Supp.)

their decisions. *Id.* at 861. The district court there remanded the case for further proceedings. However, the opinion is subject to differing interpretations because the court at one point implied that remand is required where no mention is made of the burden,[3] while it then later implied that its remand was not based solely on the failure to mention the burden of proof. Indeed, the *Hayes* remand was also supported by an independent finding that the ALJ's Step 5 determination was not supported by substantial evidence. *Id.* at 861. Thus, the *Hayes* decision is of little value in this analysis.

This Court is thus left with only the Eighth Circuit's position on the issue. For several reasons, this Court finds that the thrust of the Eighth Circuit's holdings must be accepted by this district court. This Court concludes that whenever a decision is made at Step 5 of the sequential evaluation, there must be a clear indication in either the ALJ's written decision or the record from the administrative hearing that the ALJ understood and applied the shifting burden of proof at Step 5. Only in those rare cases where it is clear that the burden of proof would be irrelevant, that is, where the record clearly shows that all the evidence supports the Secretary at Step 5 and there is no evidence supporting the plaintiff's case at Step 5, is the ALJ's failure to indicate an awareness and application of the Secretary's burden of proof excused.

The Court adopts this rule for several reasons. First, this Court is duty bound to "give most respectful consideration to the decisions of the other courts of appeals and fallow them whenever [it] can." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987). The Seventh Circuit has expressed concern when the district courts

it governs fail to adopt authoritative opinions of the other courts of appeals. "Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight." *Richards v. Local 134, International Brotherhood of Electrical Workers,* 790 F.2d 633, 636 (7th Cir.1986). This District Court follows the Seventh Circuit's directives and gives great weight in this case to the consistent holdings of the Eighth Circuit.

Second, a rule requiring there to be a clear indication that the ALJ understood and properly applied the shift in burden of proof at Step 5 is supported in logic and policy. The sequential evaluation is somewhat complex, particularly for a lawyer who has not dealt with it many times. While it may be true that most ALJ's have enough experience to know, as a matter of course, that the Secretary bears the burden of proof at Step 5, the federal courts cannot depend on such assumptions as the basis for judicial decisions. It might well be in this case that the ALJ was not aware of the Step 5 burden. If so, it was impossible for him to carry out his duties properly as the trier of fact, for knowing who has the burden of proof is central to a trier of fact's function. The point here is that if a reviewing court cannot tell whether the burden was applied, meaningful appellate review is impossible.

Third, contrary to the Secretary's implicit argument, the fact that the courts rather than the legislature have placed the burden of proof on the Secretary at Step 5 is of no avail. This Step 5 "judicial gloss" has been accepted and imposed by all federal courts for years. If it is to have any meaning, it must be applied uniformly at the administrative level.

3. The *Hayes* court did this early in its opinion where it wrote:

The Court finds that the Secretary erred at the fifth step of the evaluation by failing to assume the burden of proof to demonstrate that the plaintiff had residual functional capacity to perform other work. Although neither the ALJ nor the Appeals Council expressly stated who had the burden of proof at step five, the analysis as well as the tenor of those

opinions indicates that the burden remained on the plaintiff in step five to demonstrate that she was unable to perform light work. As this Court reads *Smith v. Bowen,* 826 F.2d 1120 (D.C.Cir.1987), the Secretary's decision must be remanded.

*Hayes,* 701 F.Supp. at 860. It should be noted that the *Smith* opinion merely holds that the Secretary bears the burden of proof at Step 5; it does not speak directly to this issue.

Fourth, the Court notes that the Appeals Council has been remanding cases on its own where it is not clear that the ALJ applied the Step 5 burden of proof. While this, in and of itself, certainly does not bind this Article III Court, it does tend to show an understanding by the Council that the ALJ, as trier of fact, must be aware of the appropriate burden of proof at each stage.

In sum, this Court, in addressing what is a question of first impression in this Circuit, finds that there must be some clear indication that the ALJ understood and applied the proper burden of proof at Step 5. The Court notes that this might not necessarily require the ALJ to specifically recite the Step 5 burden of proof. For instance, a case in which the ALJ states that the burden of proof is on the claimant through Step 4 would seem to be enough, absent any indication to the contrary, that the ALJ understood and applied the proper burden at Step 5. The boundaries of this "rule" will no doubt be worked out in other cases, although it is likely, given the Eighth Circuit cases and the current practice of the Appeals Council, that all ALJ's will specifically note the burden of proof in all their decisions.

■ The Court notes that remand is not required in those rare cases where all the evidence supports the Secretary at Step 5 and there is clearly no evidence in the record that would support the plaintiff. Such infrequent cases in essence remove the necessity of a factual determination at Step 5, thus making a remand on burden of proof grounds futile. This is in line with the Seventh Circuit's rule that minimal articulation is all that is required and cases will not be remanded merely to perfect an ALJ's decision where the outcome could be no different. *See, e.g., Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985).

C. *Remand is required in this case:*

■ In this instance, the Court, in applying these rules, finds that there is no clear indication that the ALJ understood and applied the Step 5 burden of proof. All that was said in this regard below is the following:

In applying the sequential steps outlined above, the Administrative Law Judge concludes that a decision on whether the claimant is disabled cannot be made based on work activity or on medical facts alone. Moreover, the record establishes that the claimant cannot perform her past relevant work. However, considering the claimant's residual functional capacity and her age, education, and past work experience, the Administrative Law Judge further concludes that there are other jobs which the claimant can perform and that such jobs exist in significant numbers in the national economy. Consequently, it must be found that the claimant is not disabled within the meaning of the Social Security Act.

(R. at 17). Certainly there is no indication in this passage that the burden of proof was applied, nor is there anything else in the decision or the transcript that shows application of the Step 5 burden of proof.

Nor is this one of those "rare cases" referred to by the Eighth Circuit where remand would be futile. There is sufficient evidence in the record to raise a question of fact at Step 5 as to plaintiff's ability to do other work. Because of this, remand is necessary for the trier of fact to consider the evidence under the proper burden of proof.

Accordingly, this cause is remanded to the Secretary for a *de novo* determination at Step 5, taking into consideration and expressly indicating the application of the proper burden of proof. Additionally, on remand the Secretary is to expressly state the factual findings supporting the use of the Grid if the Grid is invoked. Specifically, the Secretary is to follow the holdings of *Warmoth v. Bowen*, 798 F.2d 1109, 1110 (7th Cir.1986), and *Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir.1987), and only apply the Grid if there is reliable evidence of some kind that would persuade a reasonable person that the plaintiff's nonexertional limitations do not significantly diminish the employment opportunities otherwise available.

**D.** *To whom should the case be remanded?*

▇ The final issue in any remand case is whether the same ALJ should hear the matter again. Even though the courts implicitly address this issue on each and every remand, there is little case law on this precise question. Nor, for that matter, are there any statutes or regulations governing the issue. In order to resolve the question in this case, the Court must first evaluate what little authority there is on the subject.

In many cases the courts simply refer the matter back to the Secretary without any discussion of the issue. Indeed, this Court has done this on several occasions when there has been no request that the case be sent to a different ALJ and there was not, on the surface of the case, any reason to send the matter to a new ALJ who would start from scratch. *See, e.g., Tharp v. Bowen,* No. IP87–453–C, slip op. at 14 (S.D.Ind. March 21, 1989) (remanding without any discussion of issue).

In many other cases, the courts specifically order the remand to go to a different ALJ, but do not state the reasons for doing so nor indicate whether the plaintiff asked for such relief. *See, e.g., Kolodnay v. Schweiker,* 680 F.2d 878, 879 (2d Cir.1982) (remand to different ALJ with no explanation); *Wright v. Bowen,* 671 F.Supp. 575, 576 (N.D.Ind.1987) (Judge Sharp notes that he had previously remanded the case to a different ALJ for a Step 5 determination); *Camble v. Heckler,* No. 82–C–7567, slip op. (N.D.Ill. April 23, 1984) (remanding to different ALJ without explanation or indication that it was requested by claimant). There can be no doubt, however, that the remand to a different ALJ was made in such cases in order to ensure that the claimant's case would be reviewed without any pre-conceived conclusions. *Cf., Von Tommy v. Schweiker,* No. 82–4515, slip op. (E.D.Pa. July 2, 1985) (remanding to a different ALJ for a "fresh evaluation" because "the record ... ha[d] been reviewed twice by the same ALJ").

This is exemplified by cases such as *Leslie v. Schweiker,* 569 F.Supp. 41 (E.D.Pa. 1983), where it is clear that the court was concerned about the ALJ's impartiality. In *Leslie,* the court went to great lengths to show that the ALJ had engaged in "selective ignorance" and "misstatement[s] of evidence." *Id.* at 46. The court there also noted that the ALJ in question had been criticized on appeal on several prior occasions. Thus, it is clear that when the *Leslie* court remanded the case to be reconsidered by an ALJ other than the original one, the court was doing so in order to ensure a fair and unbiased proceeding.

On the other hand, at least two district judges have specifically refused to remand cases to different ALJs absent some indication that the initial ALJ was biased. For instance, in *Gordon v. Heckler,* 586 F.Supp. 805 (E.D.N.Y.1984), the district court refused to send the case to a different ALJ because the plaintiff had made "no allegations to suggest that the previous ALJ [wa]s not competent to hear the case." *Id.* at 808. The court there noted that plaintiff "may be correct in asserting that the same ALJ is likely to render the same findings as to plaintiff's credibility...." *Id.* Nonetheless, the court held that "this does not, of necessity, entitle the plaintiff to a different ALJ." *Id.*

The *Gordon* court explained its decision, writing,

> 'The function of the remand is not to give the plaintiff a second opportunity to prove his case, but rather to make an adequate record for appeal. I assume that plaintiff will be given a fair hearing, regardless of which ALJ hears her case. If she is not, the point can be raised on appeal.'

*Gordon,* 586 F.Supp. at 808 (*quoting Smith v. Heckler,* No. 83–Civ.–4223, slip op. (S.D.N.Y. Feb. 16, 1984)).

It should be noted, however, that both the *Gordon* and *Smith* cases involved remands for the sole purpose of obtaining an audible tape recording and accurate transcript. Thus, the language used in these cases that the function of the remand was to make an adequate record for appeal does not carry over to remand cases based on

legal or factual errors occurring at the administrative level.

Beyond these cases, this Court has not located any other relevant authority or commentary on the issue. A review of the cases discussed above shows that the courts certainly have the discretion to send the matter to a different ALJ on remand, and that some courts have done so in order to ensure the plaintiff receives a full and fair evaluation below. Yet the blanket proposition that the original ALJ is pre-disposed to reject the claim on remand is unsettling at the least. The ALJs are professionals, and absent evidence in a particular case that the claimant's rights could be infringed, this Court is leery of impugning the integrity of the ALJs and hampering the efficiency of the social security system by adopting a *per se* rule dictating that remands should go to a different ALJ.

On the other hand, however, there is in this Circuit a policy of sending remanded cases to different judges unless the parties request otherwise. This is reflected in Circuit Rule 36, which was promulgated by the Seventh Circuit and reads as follows:

> Whenever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case. In appeals which are not subject to this rule by its terms, this court may nevertheless direct in its opinion or order that this rule shall apply on remand.

*See* Circuit Rule 36. Implicit in this rule is a recognition that in the administration of justice it is sometimes preferable to start over even though the start-up time for the new judge could be significant. The rule is intended to ensure that remanded cases are heard with the least possibility of any predisposition towards a certain result.

This rule is not, of course, binding in any way on social security cases being remanded to the Secretary. Rule 36 does, however, at least indicate that this Circuit views the absolute preservation of rights more importantly than the pride or caseloads of the judges charged with administering justice. As such, Rule 36 is commendable and should at least be considered in this context for its policy implications.

In light of all these factors, this Court determines that remand to a different ALJ is appropriate in certain cases in order to ensure that a full and fair evaluation is given on remand. However, this Court will only consider this type of action where: (1) the plaintiff has requested remand to a different ALJ; and (2) there is some legitimate, compelling reason to have a different ALJ perform the ordered task on remand.[4]

The first condition is simply a recognition that plaintiffs are masters of their cases, and if they desire, for whatever reason, to stay with the same ALJ, then this Court shall not interfere with that decision.[5] The second condition requiring there to be some legitimate reason for sending the case to another ALJ is an acknowledgement of the ALJ's competence and integrity, as well as the inefficiency that would result if all remands had to be started from scratch. While the courts certainly have the power to impose such a *per se* condition, this Court finds it appropriate to defer to Congress to take such action, particularly where it has not spoken to the issue at all.

Under this rule, each case is necessarily fact sensitive and should be decided on a case-by-case basis. For instance, in a case where the ALJ is found to have erred at Step 4, there would presumably be no compelling reason to send the case to a different ALJ for the Step 5 determination in light of the fact that the original ALJ never ventured into this final stage of the sequential evaluation. On the other hand, a case like today's, wherein the ALJ has

---

4. In cases where the plaintiff is not represented by counsel, this first condition would of course need to be applied flexibly.

5. The Court recognizes that the Secretary might not choose to send the case to the same ALJ for his own independent reasons. That is to say, there is never a guarantee that the same ALJ will, in fact, hear the case again.

played trier of fact throughout all steps of the sequential evaluation but might not have applied the proper burden of proof, might be a prime candidate for remand to a different ALJ.

In this case, however, there has been no request made by the plaintiff for remand to a different ALJ, notwithstanding the fact that this is commonly done by social security practitioners. Thus, the first condition is not satisfied and the original ALJ may hear the matter on remand should the Secretary so desire. Should the plaintiff change her mind and wish to request that another ALJ hear the matter on remand, she is of course not precluded from asking the Secretary for such relief at the administrative level.

This case is thus affirmed in part and remanded in part for further proceedings at Step 5. The matter may be heard by any ALJ on remand. The Clerk of this Court shall close this file. However, should appeal be taken to this Court in the future, the case shall be reopened without payment of a filing fee, and the matter shall be referred to the undersigned.

IT IS SO ORDERED.

## ORDER ON MOTION TO ALTER OR AMEND JUDGMENT

The Secretary has asked the Court to reconsider the Order remanding the cause for further proceedings at Step 5. In that Order, this Court determined that remand was required because the Secretary did not specifically acknowledge or implicitly recognize that the burden of proof shifted from the claimant to the Secretary at Step 5 of the sequential evaluation.

In support of his motion, the Secretary in essence makes two arguments. First, he contends that the burden of proof imposed upon him at Step 5 is merely a burden of production that is satisfied by use of the Grid. Second, he contends that this Court's decision is in conflict with the Seventh Circuit's standard of "minimal articulation" expressed in *Stephens v. Heckler*, 766 F.2d 284, 287–88 (7th Cir.1985). Each issue is addressed separately below.

## I. *Burden of Persuasion or Burden of Production:*

■ Citing to employment discrimination cases such as *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), the Secretary argues by analogy that the burden of proof placed upon him at Step 5 is one of production rather than ultimate persuasion. This assertion is not without merit, for if the burden were merely one of production, and, as in this case, the Secretary "produced" the Grid, there would seemingly be little to gain from remanding the cause to require the ALJ to recognize this "burden." As discussed below, however, the burden is one of proof and persuasion rather than just production, and in this particular case the failure of the ALJ to acknowledge this burden requires remand.

As noted previously by this Court, the burden placed upon the Secretary at Step 5 is a "long-standing judicial gloss" imposed by the courts "on the Social Security Act." *Walker v. Bowen*, 834 F.2d 635, 640 n. 3 (7th Cir.1987). Thus, in order to discern what this gloss means, it is necessary to look to the cases that discuss this burden-shifting under the Act. The fact that other areas of the law place a shifting burden of production upon a particular class of defendant, though useful for drawing analogies, does not mandate the conclusion that the judicial gloss imposed in this Social Security context is merely one of going forward with evidence.

To the contrary, the fact that the Secretary has found it necessary to resort to analogy from other substantive areas speaks loudly to the probable absence of any case law, *in the Social Security setting*, suggesting that the burden on the Secretary is only one of production. Indeed, although the Secretary argues that "claimants continuously bear the burden of persuasion on the issue of disability," (Br. at 3), the Secretary has not cited a single case that directly describes the Step 5 burden as one of "production."

True, at one point in his brief the Secretary cites an Eleventh Circuit decision for the proposition that at Step 5 the "burden shifts to the Secretary *to produce evidence* of other jobs...." (Brief at 3) (emphasis in original), *citing Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987). A review of the *Hale* decision, however, reveals no such language. Instead, the Eleventh Circuit stated that at Step 5 the "burden then shifts to the Secretary to *show* the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (emphasis added). It is significant here that the Eleventh Circuit used the word "show," which means to "make apparent or clear by evidence, to prove." *Black's Law Dictionary* 1237 (5th ed. 1979).

Moreover, an examination of the two cases cited by the *Hale* court in discussing the burdens of proof actually refute the Secretary's argument here. In *Hale,* the Eleventh Circuit cited to *Francis v. Heckler,* 749 F.2d 1562 (11th Cir.1985), and *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir. 1983). The *Francis* decision, however, contains only the following statement on burdens of proof: "Once the ALJ has determined that a claimant is unable to carry on his ordinary work, the burden then shifts to establish that he has the residual functional capacity for either 'medium work,' 'sedentary' work[,] or 'light' work." *Francis,* 749 F.2d at 1564. This decision thus in no way supports the proposition that the burden on the Secretary is only one of production.

Similarly, in *Boyd,* the Eleventh Circuit discussed the burdens of proof as follows:

The claimant bears the initial burden of establishing the existence of a disability. To shoulder this burden, the claimant must prove that he is unable, due to his physical or mental impairment, to perform his previous work. The burden then shifts to the Secretary to establish that there is alternative gainful employment in the economy that the claimant is able to perform. If the Secretary is successful, the burden shifts one final time—back to the claimant, who then must prove that he is unable to perform the jobs suggested by the Secretary. *Smith v. Schweiker,* 646 F.2d 1075, 1077 (5th Cir.1981).

*Boyd,* 704 F.2d at 1209–10.

Thus, the *Boyd* decision also does not suggest anything less than a burden of persuasion. Indeed, the fact that the Secretary must prove other available employment "that the claimant is able to perform" indicates that the Secretary must do more than merely produce a list of jobs. To the contrary, the Secretary must *"establish"* that the severely impaired claimant, who has progressed through Step 4, can actually perform some other work.[1]

Thus, the *Hale* decision does not stand for the proposition advanced by the Secretary, and the Secretary has not tendered any other authority that directly supports such a statement. Thus, this Court has not been provided with any decisions that af-

---

**1.** Additionally, it must be noted that the *Smith* decision relied upon by the *Boyd* court for its discussion of burdens of proof (and which ultimately led to the *Hale* statement upon which the Secretary bases its argument in this case) also refutes the Secretary's position. In *Smith,* the court explained the burdens as follows:

We also recall that the scheme of the act requires the claimant to carry the initial burden of establishing the existence or continued existence of a disability by proving that he is unable to perform her previous work. Once this is shown, the burden shifts to the Secretary to *establish* that there is other substantial gainful employment in the economy which the claimant can perform. If the Secretary points to possible alternative employment, the

burden of persuasion then *returns* to the claimant to prove her inability to perform those jobs.

*Smith,* 646 F.2d at 1077 (emphasis added, footnote omitted). The fact that the Secretary's burden is one of *establishing* a proposition, and that the burden of persuasion "returns" to the claimant, implies that the *Smith* panel viewed the burden of persuasion as shifting to the Secretary (at least for a period of time) at Step 5. Moreover, the cases relied upon by the *Smith* court further support the proposition that the burden of persuasion shifts to the Secretary at Step 5. *See, e.g., Fruge v. Harris,* 631 F.2d 1244, 1246 (5th Cir.1980) ("Once this is shown, the burden shifts to the Secretary to establish....").

firmatively describe the Step 5 burden as one of mere production.[2]

Nonetheless, the Court has conducted a further review of the law in this area, but no binding cases have been located.[3] Instead, the cases seem to uniformly use terms suggesting that the burden is really one of proof and persuasion rather than just production.

For instance, three years ago the Supreme Court had occasion to discuss what it called "settled allocation of burdens of proof in disability proceedings." *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). In *Yuckert*, the Supreme Court explained that "the Secretary bears the burden of proof at step five, that determines whether the claimant is able to perform work available in the national economy." *Id.* It is significant that the *Yuckert* Court did not qualify this by speaking in terms of a burden of production, nor did it go on to state, as the Secretary would like to hear, that the "ultimate burden" shifts back to the claimant.[4]

2. The Court notes that this is not the only instance in which the complete candor formerly demonstrated by the Secretary has seemingly been lost on reconsideration. For instance, the Secretary states that the "Supreme Court has also recognized that the burden of persuasion on the issue of disability rests with Social Security claimants." (Br. at 3), *citing Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). However, the case relied upon by the Secretary for this proposition is inapposite here. In *Mathews*, the Supreme Court was addressing *termination* of disability benefits that have been previously awarded. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903 ("We turn first to a description of the procedures for termination of Social Security disability benefits...."). Thus, when the Supreme Court stated that the worker "bears a continuing burden of showing ... [disability]," it was not referring to a particular burden within the sequential evaluation process. Rather, as is clear from the decision, the *Mathews* Court was speaking to the claimant's obligation to show, over a long period of time, that he remains disabled. The two concepts are so distinct as to be of little or no value for analogy, let alone the direct proposition advanced by the Secretary in this case.

Nowhere in the *Mathews* opinion did the Supreme Court "recognize" that the burden of persuasion on the issue of disability rests with Social Security claimants at Step 5. Thus, the Secretary's assertion on this point is a stretch of the Supreme Court's decision. It would have been appropriate for the Secretary to attempt to make the express analogy; hopefully that was the intent. The Court notes again that the Secretary's counsel originally displayed commendable candor in this lawsuit by advising the Court of adverse authority. In the motion for reconsideration, however, several of counsel's assertions border on over-reaching. Whether this is due to the appearance of additional counsel (Mr. Stephens was not named as counsel in the original briefs) is unknown. Whatever the reason, this unfortunate shift in style detracts from an otherwise creative and well-written brief and that has caused the Court to spend additional time in thoroughly checking all of the Secretary's assertions.

3. This is not to say conclusively that no such cases exist, but to simply point out that none have been located by the Court, nor, apparently, by the Secretary who would benefit from such authority. The Court has discovered a 1962 district court opinion that speaks of the Secretary's "burden to produce some evidence of employment opportunities which were reasonably available to the claimant...." *Paul v. Ribicoff*, 206 F.Supp. 606, 611 (D.Colo.1962). However, this 28–year–old decision conflicts with the language used by today's courts, including the Seventh Circuit. The Court has also located a treatise that could be read as describing the Secretary's burden as being one of going forward. *See Social Security Disability Claims* § 19:02 (1990 Supp.) ("The central issue is the extent of the burden. * * * The courts have tied the sufficiency issue to the substantial evidence rule.... * * * This concept refers to the burden of persuasion. There is also the burden of going forward. Most of the courts have ruled that once an individual proves inability to perform past relevant work, the burden shifts to the Secretary for a showing of ability to do other types of work. Regardless, disabled individuals bear the ultimate burden of presenting such proof as would convince *the adjudicator that he or she is disabled.")

However, this treatise does not cite a single case in support of this proposition. Moreover, another treatise suggests that the Secretary's burden is, in fact, one of persuasion rather than just production. *See 2 Social Security Practice Guide* § 15.05[2] (1990) ("[The grid] cannot alone, in the absence of factual conclusions and evidence, support the Secretary's burden. Utilization of the grid regulations does not change the burden of proof placed on the Secretary to show that a claimant is capable of engaging in substantial gainful activity.").

4. The Eleventh and Fifth Circuit cases above that spoke of three burdens of persuasion (the first on claimant, the second on the Secretary, and the third on the claimant) are not inconsistent with a complete shifting of the burden of persuasion to the Secretary at Step 5. If, in fact, there is such a third shift back to the

Rather, the Supreme Court indicated that after the claimant has carried its "burden of proof" through Step 4 to show that he is not working, that he has a medically severe impairment, and that he cannot perform his past work, the Secretary bears the "burden of proof." *Id.* Certainly the Secretary does not suggest that the "burden of proof" term used by the Supreme Court when speaking to the claimant's burden refers to a burden of production. By the same token, nothing in the *Yuckert* opinion suggests that the Secretary's "burden of proof" is anything other than one of proof and persuasion.

A review of decisions from this circuit supports this conclusion. For instance, in an oft-cited 1980 decision, the Seventh Circuit did not just refer to a "burden of proof," but stated instead that at Step 5 the "burden therefore shifts to the Secretary *to prove* that the claimant is capable of performing other 'substantial gainful activity' under the Act." *McNeil v. Califano,* 614 F.2d 142, 145 (7th Cir.1980) (emphasis added). The verb "prove" used by the *McNeil* court means to "establish or make certain." *Black's Law Dictionary* 1103. Moreover, the burden is not just to introduce evidence of other jobs in the economy, but to prove that the particular claimant can perform other work. Thus, the language of the *McNeil* decision indicates that the Step 5 burden is one of proof and persuasion.

Later decisions from the Seventh Circuit contain similar language. For instance, in *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984), the court wrote that after the claimant has progressed through Step 4, "[t]he burden then shift[s] *to show* the claimant retained the residual functional capacity to perform other work...." *Id.* (emphasis added). As noted previously, the word "show" means to "make apparent or clear by evidence, to prove." *Black's Law Dictionary* 1237. This again indicates a

burden of persuasion rather than mere production.

To the same effect is *Walker v. Bowen,* 834 F.2d 635 (7th Cir.1987). There the Seventh Circuit wrote that at Step 5 the "burden then shifts to the Secretary *to demonstrate* that the claimant retains sufficient 'residual functional capacity' to perform other work...." *Id.* at 640 (emphasis added). As with the verbs used on other occasions, the word "demonstrate" similarly means to "show or prove value or merits by operation, reasoning, or evidence." *Black's Law Dictionary* 389.

Similarly, the more recent decisions use language having these connotations. *See, e.g., Pugh v. Bowen,* 870 F.2d 1271, 1275 (7th Cir.1989) ("At step five, the Secretary has the burden of proving that a claimant retains the residual functional capacity ... to perform other work...."); *Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988) ("the Secretary must then show...."). Indeed, in *Stewart v. Bowen,* 858 F.2d 1295, 1297 n. 2 (7th Cir.1988), the Seventh Circuit described the Secretary's burden as a "burden of establishing" that other work can be performed by the claimant. Referring once again to *Black's Law Dictionary,* it is seen that the phrase "burden of establishing" means "the burden of persuading the trier[ ] of fact that the existence of the fact is more probable than its non-existence." *Id.* at 178.

Thus, the Seventh Circuit seems to understand the Step 5 burden to be one of proof and persuasion rather than mere production. Even if all of the above quotations are considered dicta, they must be accorded weight in this setting. *Timmreck v. United States,* 577 F.2d 372, 374 (6th Cir.1978) (district courts are bound by pertinent decisions of their circuit even if they find what they consider more persuasive authority in other circuits); *Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir.1987) (same). As Judge Bua of the Northern District of Illinois has noted, "In

___

claimant, this merely means that after the Secretary has persuasively proven that other work exists and can be performed, the claimant still has one last shot to prove otherwise. This is really no different from simply saying that the

burden of persuasion rests with the Secretary at Step 5, for such a burden encompasses the claimant's opportunity to refute the Secretary's case.

the absence of a controlling Supreme Court ruling, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of *dictum." Max M. v. Thompson*, 585 F.Supp. 317, 324 (N.D.Ill.1984). *Accord, In Re Bremer*, 104 B.R. 999, 1005 (Bankr.W. D.Mo.1989) (same).

If the Secretary had advanced persuasive arguments for disregarding the language of these Seventh Circuit decisions, then the result might be different. However, the discrimination cases relied upon by the Secretary do not carry the day in this Social Security setting. The fact that the Supreme Court, in the 5–4 decision of *Wards Cove Packing Co.*, 109 S.Ct. at 2125–27, declared that the burden of proof placed on an employer in a disparate impact Title VII case is solely a burden of production is of little value here for several reasons.

First, in most settings "the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party." *McCormick on Evidence* 951 (3d ed. 1984). *Accord, Wards Cove Packing*, 109 S.Ct. at 2131 n. 17 (Stevens, J., dissenting) ("he who seeks to move a court in his favor, whether as an original plaintiff ... or as a defendant, who, in ... setting up an affirmative defence, takes the role of *actor* ... [and] must satisfy the court of the truth and adequacy of his claim both in point of fact and law."). That it took a sharply divided Supreme Court decision to show otherwise in the employment discrimination setting indicates the validity of this presumption. Thus, absent any showing to the contrary, one would presume in the Social Security setting that the burden placed upon the Secretary at Step 5 includes the burden of persuasion, just as the claimant bears the burden of persuasion through Step 4.

Second, in disparate impact Title VII cases, unlike Social Security claims, there are policy reasons for requiring the defendant to satisfy only a burden of production not a burden of ultimate persuasion. As the Supreme Court explained in *Wards Cove Packing*, 109 S.Ct. at 2126, leaving the ultimate burden of persuasion on the plaintiff in such cases "conforms to the rule in disparate treatment cases that the plaintiff bears the burden of disproving an employer's assertion that the adverse employment action or practice was based solely on a legitimate neutral consideration." Disparate impact claims thus present unique circumstances that have no logical relevance to the question at Step 5 of whether a disability claimant can perform other work.[5]

Indeed, in the Social Security context there are sound reasons for applying the presumption that the burden of persuasion shifts to the Secretary at Step 5. Here it must be remembered that the inquiry at Step 5 is whether a claimant who has gone so far to prove inability to do her past work can nonetheless perform other work in the national economy. As one treatise explains, "[T]he Secretary [must] show that, given the claimant's impairments, age, education, and work experience, the claimant still has the capacity to perform specific jobs that exist in significant numbers in the national economy." 2 *Social Security Practice Guide* § 15.05[2] (1990).

Just as it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so," *Yuckert*, 482 U.S. at 147 n. 5, 107 S.Ct. at 2294 n. 5, so too is it not unreasonable to place the burden of proof on the Secretary to establish that the Step 5 claimant is able to perform other work in the national economy. To require the claimant to "disprove" his ability to do other work would effectively thwart the remedial purpose of the Act, for few if any single claimants could sustain such an onerous burden. On the other hand, the Sec-

---

**5.** Moreover, as Justice Stevens pointed out in his dissent for the four person minority, there are other non-employment settings such as price discrimination in which both the burden of production and persuasion shifts to the defendant. *Wards Cove Packing*, 109 S.Ct. at 2131 n. 17 (Stevens, J., dissenting) (noting that in suits alleging price discrimination it is well settled that the defendant has the burden of affirmatively establishing cost justification or good faith efforts to meet a competitor's equally low price).

retary, with vast nationwide resources, can attempt to meet this burden without great difficulty. *Cf., McCormick on Evidence* 950 ("where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue").

Thus, as the language of the Seventh Circuit decisions suggests, the burden of production *and* persuasion shifts to the Secretary at Step 5 of the sequential evaluation process. In this case, then, the ALJ's omission was not merely the failure to acknowledge a burden of production. The significance of this omission is addressed further below.

## II. *The Consequences:*

The Secretary next argues that remand should not be required, despite the ALJ's failure to acknowledge the burdens of proof in this claim. On reconsideration, this Court notes the issue appears closer than in the original order, but nonetheless holds that in this particular case remand is appropriate.

The Secretary's first argument is disposed of easily. The Secretary asserts that because the Supreme Court and Seventh Circuit have never imposed a requirement that ALJs articulate the burdens of proof, these courts have implicitly approved a non-articulation policy. However, the mere fact that no such requirement has been imposed in the past is of little if any significance. This is particularly true in that most ALJs (at least in the majority of cases reviewed by the undersigned) specifically state what the respective burdens of proof are.

Indeed, in order for the issue to ever reach the appellate courts, an ALJ would have to fail to discuss the burdens, a claimant would have to decide to appeal, and the claimant's attorney would have to raise the issue. Apparently, this has not previously occurred in the Seventh Circuit or in any case reaching the Supreme Court. Thus, the lack of any decision from these courts on the issue cannot be used as authority for rejecting an articulation rule anymore than it can be invoked *in support* of such a requirement.

The Secretary's next argument is that, in general, the Seventh Circuit imposes a minimum articulation standard in social security cases. This was noted by this Court in its previous opinion, but nonetheless warrants additional consideration at this juncture. For instance, in *Brown v. Bowen*, 847 F.2d 342, 345 (7th Cir.1988), the Seventh Circuit stated that it accords decisions of ALJs a "presumption of regularity." The *Brown* court added that "almost any opinion can be read in a way that is consistent with legal error, and if resolving doubts against the trier of fact were appropriate, we would remand a large percentage of all cases." *Id.*

Similarly, in *Arbogast v. Bowen*, 860 F.2d 1400, 1406 (7th Cir.1988), the Seventh Circuit wrote that "where the reasoning of the ALJ's decision is apparent, we do not require the ALJ to articulate explicitly his credibility determinations." Moreover, in *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989), Judge Posner explained that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." And, as this Court noted in its previous opinion, the Seventh Circuit has also stated that minimal articulation is all that is required and that cases will not be remanded merely to perfect an administrative decision when the outcome could be no different. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985).

As before, such language from the Seventh Circuit must be accorded at least some weight in this setting. *See, e.g., Timmreck v. United States*, 577 F.2d 372, 374 (6th Cir.1978) (district courts are bound by pertinent decisions of their circuit even if they find what they consider more persuasive authority in other circuits); *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987) (same). *Max M. v. Thompson*, 585 F.Supp. 317, 324 (N.D.Ill.1984) (Seventh Circuit dicta must be given weight).

On the other hand, as discussed in this Court's previous opinion, the Seventh Circuit has instructed its district courts to "give most respectful consideration to the

decisions of other courts of appeals and follow them whenever [they] can." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987). Although such decisions "are not necessarily controlling, the district courts should give them substantial weight." *Richards v. Local 134, International Brotherhood of Electrical Workers*, 790 F.2d 633, 636 (7th Cir.1986).

Judge Posner elaborated on these concepts in *Colby*, writing that a standard in between "some deference and complete deference" is appropriate when cases in different circuits challenge the same practice of the same defendant. *Colby*, 811 F.2d at 1124. The purpose of such a rule is not to deprive the parties of the Court's "independent judgment," *Id.* at 1123, but is instead to maintain "a reasonable uniformity of federal law ... sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits...." *Id.* at 1123. *Accord, Richards*, 790 F.2d at 636 (noting the existence of Circuit Rule 16(e) in this context, which requires proposed opinions of the Seventh Circuit that would create a conflict among the circuits to be circulated to determine whether an *en banc* hearing is necessary).

Indeed, there is a strong policy in the federal courts of achieving uniformity among the circuits. This policy is particularly prevalent in areas affecting large numbers of citizens such as federal taxation, *Federal Life Ins. Co. v. United States*, 527 F.2d 1096, 1098–99 (7th Cir. 1975); *Gibraltar Financial Corporation v. United States*, 825 F.2d 1568, 1572 (Fed. Cir.1987), as well as in social welfare programs. *Butler County Memorial Hospital v. Heckler*, 780 F.2d 352, 357 (3d Cir. 1985); *Martin v. Heckler*, 773 F.2d 1145, 1153 (11th Cir.1985). This policy of uniformity explains why the Seventh Circuit

has instructed its district courts to follow other courts of appeals whenever possible.[6]

Thus, this District Court is left with the difficult task of balancing the duty to respect the Eighth Circuit's pronouncements on this precise issue against the duty to give weight to the Seventh Circuit's general philosophy towards social security appeals. Unfortunately, at this point there is no clear path traversing between these two seemingly competing concepts. It is thus appropriate to engage in further analysis for possible guidance.

The rules regarding the specificity of decisions made by district court judges, such as summary judgment rulings or decisions on the merits after bench trials, might be of relevance. In general, the Seventh Circuit has stated that when such decisions are not explained, "an appellate court should be skeptical." *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir.1990). The failure to state sufficient reasons for a decision ordinarily leads to a remand. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.1990). Judge Easterbrook has expounded on this, writing:

> Explanation produces intellectual discipline; a judge who sets down in writing (or articulates in court) the reasons pro and con, and his method of reaching a decision, must work through the factors before deciding, and we then may be sure that the conclusion is based on appropriate considerations even if not necessarily one we would have reached ourselves.

*Horn*, 898 F.2d at 592.

This policy is reflected as well in Fed.R. Civ.P. 52(a), which requires a district judge, in a case tried without a jury, to "specially" find the facts and "state separately its conclusions of law." In the Seventh Cir-

**6.** A passage from the *Colby* opinion, when taken out of context, could support the argument that district courts are not to be concerned with uniformity. Such is not the case, however. The passage in question from *Colby* provides that the "reasons we gave for giving some though not controlling weight to decisions of other federal courts of appeals do not apply to decisions of other district courts, because the responsibility for maintaining the law's uniformity is a re-

sponsibility of appellate rather than trial judges...." *Colby*, 811 F.2d at 1124. The Seventh Circuit's point here was not that district courts should ignore the goal of uniformity among the circuits, but rather that district courts should not necessarily seek to achieve uniformity among other district courts. Indeed, this is implicit in the *Colby* directive that district courts should accord *substantial weight* to decisions of other courts of appeals.

cuit, "such findings are adequate if they are sufficiently comprehensive to disclose the steps by which the trial court reached its ultimate conclusion on factual issues." *Bartsh v. Northwest Airlines, Inc.*, 831 F.2d 1297, 1304 (7th Cir.1987).

In cases tried to juries, the appellate courts routinely find error if the trier of fact is not adequately instructed on the proper burdens of proof. *See, e.g., Davis v. Lane*, 814 F.2d 397, 401 (7th Cir.1987) (failure to instruct that defendant has burden of proof to show justification in battery action is error); *Deas v. Paccar, Inc.*, 775 F.2d 1498, 1506 (11th Cir.1985) (failure to instruct on burdens of proof is error); *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 594 (6th Cir.1986) (same). As the Sixth Circuit has explained, without explicit instructions on the matter it "seems unlikely that the unguided jury [will be] able to perceive the correct placement of the burden of proof." *Id.*

In the employment discrimination setting relied upon by the Secretary where specific burdens of production and persuasion are applicable, the courts have shown some tolerance to incomplete findings or instructions. For instance, in *Horn v. Duke Homes, Div. of Windsor Mobile Homes*, 755 F.2d 599, 603 n. 1 (7th Cir.1985), the Seventh Circuit did not find error in the district court's failure to specifically outline the burdens in its findings. According to the Seventh Circuit, the record indicated that the district court had, in fact, applied the appropriate burdens.

Similarly, in *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1012 (6th Cir. 1987), the Sixth Circuit found no error where the trial court did not fully instruct the jury on the shifting burdens in a disparate treatment case. The *Kitchen* court explained that because the jury was adequately instructed on the general burdens, the trial court did not err by failing to "precisely follow the legal niceties" of the disparate impact rules.

Both cases are distinguishable, however, from today's setting. First, rather than a single shift in the ultimate burden of proof, they involve "detailed dissections" (*Horn,*

755 F.2d at 603 n. 1) of the disparate impact burdens of production and persuasion; dissections which the Sixth Circuit even called "legal niceties." In today's case, however, the shift in the burden of proof and persuasion is more than just a nicety. It is an important aspect of the sequential evaluation process that the federal courts have imposed on the Secretary in order to promote the remedial aspects of the Social Security Act. As the Seventh Circuit has stated in an analogous situation, "While creating fine distinctions about the allocation of burdens is often a pointless judicial exercise, in the present case, where the final determination often comes down to a 'swearing match,' the allocation of burdens may be decisive." *McDonald v. United Air Lines, Inc.*, 745 F.2d 1081, 1088 (7th Cir.1984) (reversing in part orders in discrimination case that involved shifting burdens of proof).

Second, in both cases it was evident from the record that the district court had, in fact, either substantially instructed on or applied the appropriate burdens. By contrast, in today's case there is nothing to suggest that the ALJ placed the Step 5 burden of proof on the Secretary. In light of the fact that the burden of proof in most civil cases and in the first four steps of disability claims is on the claimant, it would not be illogical to presume, absent any showing to the contrary, that the ALJ improperly placed the burden of proof on the claimant at Step 5 as well. *Cf., McCormick on Evidence* 948 ("If no burden of persuasion were acknowledged by the law, one possible result would be that the trier of fact would purport to reach no decision at all. The impact of nondecision would then fall by its own weight upon the party, usually the plaintiff, who sought a change in the status quo. Although this is generally where the law would place the burden anyhow, important policy considerations may dictate that the risk should fall on the opposing party.").

On balance, then, this Court determines again that remand is required in this particular case. This is admittedly a close question, and it is tempting to summarily rely

on the Seventh Circuit dicta regarding presumptions of regularity and minimal articulation. However, this simply is not the type of case noted in *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985), in which the outcome on remand could be no different. Nor is it one where the "reasoning of the ALJ's decision is apparent...." *Arbogast*, 860 F.2d at 1406.

In this case, the claimant had already shown that her severe impairments preclude her from her past light work, and there is conflicting evidence on whether her nonexertional impairments of pain and low intellectual functioning prevent her from doing the full range of simple, unskilled sedentary work. The record contains ample evidence of such nonexertional impairments. For instance, one doctor wrote that the claimant "seems to be rather impaired intellectually. For example, she thinks Ohio is a city." Even the ALJ found such nonexertional impairments to exist when he wrote that the claimant has severe back pain, borderline intellectual functioning, and a passive-aggressive personality. However, the ALJ apparently relied on evidence to the contrary to rule that the nonexertional impairments do not preclude the plaintiff from the full range of simple, unskilled sedentary work. Under the evidence presented, this Step 5 factual finding could be affected by placing the burden of proof on different parties.

Moreover, as recognized by the Eighth Circuit cases that this District Court is obliged to accord substantial weight, the shifting burden of proof at Step 5 is important enough to require some indication that it was actually applied. The federal courts must do more than just supply a judicial presumption of application in settings such as this where it is more logical to presume, absent any suggestion in the record to the contrary, that the burden of proof was placed on the party attempting to alter the status quo.

It is one thing to endorse the presumption that appropriate credibility findings have been made. Indeed, the adverse result ("not disabled") supplies the basis for implying that such rulings have been made.

It is quite another thing to create a presumption about a burden of proof that would otherwise remain on the claimant. If the shifting burden is important enough to be imposed by the courts via a judicial gloss to the Act, then it must be important enough to require its actual application as well.

Finally, the Secretary also takes issue with this Court's discussion of what exceptions there might be to a rule requiring the Step 5 burden of proof to be articulated. In this respect, this Court previously stated that "there must be some clear indication that the ALJ understood and applied the burden of proof at Step 5," and that "remand is not required in those rare cases where all the evidence supports the Secretary at Step 5 and there is clearly no evidence in the record that would support the plaintiff." The Secretary asserts that this "all the evidence" language creates a "burdensome standard ... not suggested by the Eighth Circuit...." (Br. at 7).

In addressing this argument, it should first be noted that it is not this District Court's function to postulate an all-encompassing standard, and to the extent that this Court's prior opinion suggests such an effort, it must be taken with this qualification. Nonetheless, the Court notes that the Eighth Circuit has, in fact, formulated a similar exception, writing that remand is required "except in those rare instances where the outcome would be clear regardless of who shoulders the burden of proof." *Bradshaw v. Heckler*, 810 F.2d 786, 789 (8th Cir.1987). This is consistent with the Seventh Circuit's statements that remand is only necessary where the result might be different. *Fisher*, 869 F.2d at 1057; *Stephens*, 766 F.2d at 287.

Thus, to the extent (if any) that this Court's "all the evidence" language is inconsistent with these appellate statements, it is of little value anyway. Accordingly, there is no reason to modify the prior opinion in this respect.

For these reasons, the Secretary's motion is DENIED. Although both issues present close questions, the Court concludes that the burden on the Secretary at

Step 5 is one of persuasion, and that in this case remand is warranted because there is no indication that the ALJ understood and applied this burden.

IT IS SO ORDERED.